2008 OK 29

**Donald J. BIERMAN, Plaintiff/Appellee,**

v.

**ARAMARK REFRESHMENT SERVICES, INC., Defendant/Appellant.**

**Nos. 104,421, 104,434.**

Supreme Court of Oklahoma.

April 1, 2008.

Rehearing Denied Dec. 8, 2008.

Matthew B. Free, Angela L. Smoot, Oklahoma City, Oklahoma, for Appellant.

R. Stephen Haynes, Oklahoma City, Oklahoma, for Appellees.

KAUGER, J.

¶ 1 The issues presented are: 1) whether the employer is liable for the accident under the doctrine of *respondeat superior;* 2) whether the trial court erred by striking the injured party's claim for punitive damages; and 3) whether the trial court erred by failing to instruct the jury on life expectancy and prior existing condition. We find that: 1) the Court of Civil Appeals' finding that the employer is liable under the doctrine of *respondeat superior* is the law of the case; 2) the trial court abused its discretion by strik-

ing the claim for punitive damages; and 3) the trial court did not err by refusing the inclusion of jury instructions on mortality tables and aggravation of a pre-existing condition.

## FACTS

¶ 2 On May 13, 1998, the injured party, the appellee, was driving northbound on the access road on the east side of the Broadway Extension in north Oklahoma City. A delivery van owned by the employer, the appellant, and driven by the employee, struck the injured party's vehicle. The van was traveling south on the Broadway Extension and had crossed the northbound lanes of the highway and the southbound lanes of the east access road before colliding head-on with the injured party's vehicle. At the hospital, over two hours after the accident, the employee's blood alcohol content measured 0.122 gm/dl, a level above the legal limit.[1] An inventory of the van conducted by the employer after the accident uncovered an open container of peach schnapps.

¶ 3 On February 24, 1999, the injured party filed suit in Oklahoma County District Court against the employee. He alleged that her negligence was the cause of severe and permanent injuries to his person.[2] He also named the employer as a defendant under the theory of *respondeat superior,*[3] alleging that the employee was employed by the employer and the accident occurred while the employee was performing her duties for the employer. He also alleged that the employer was liable because it failed to properly investigate the hiring of the employee and knew or should have known that she was not adequately trained for the position because she had a prior history of driving under the influence of alcohol. The injured party sought both actual and punitive damages.

---

1. The current legal limit for driving under the influence of alcohol in the State of Oklahoma is 0.08 gm/dl (47 O.S. Supp.2006 § 11–902(A)(1)). The legal limit at the time of the accident was 0.10 gm/dl (47 O.S. Supp.1998 § 11–902(A)(1)).

2. The injured party alleged broken ribs, spinal injuries, various cuts and bruises, and permanent, severe tinnitus.

3. *Respondeat superior* is a Latin phrase that translates to "let the superior answer." *Sisk v. J.B. Hunt Transport, Inc.,* 2003 OK 69, ¶ 7 fn. 15, 81 P.3d 55. Under the doctrine of *respondeat superior,* an employer is liable to the general public for the acts of its employee, provided the employee was acting within the scope of employment. *State ex rel. Okla. Bar Ass'n v. Taylor,* 2000 OK 35, ¶ 19 fn. 31, 4 P.3d 1242.

¶ 4 The employee could not be located for personal service and was served by publication. On October 15, 1999, the injured party moved for a default judgment against the employee because she had not filed an answer. On October 25, 1999, the employer's counsel filed an answer on the employee's behalf. On October 28, 1999, the injured party and the employer filed a joint motion for withdrawal of the injured party's motion for default judgment, which was granted by the trial court. On August 15, 2000, the employer's counsel withdrew from representation of the employee because she had still not been located by either party. On May 9, 2002, the injured party renewed his motion for a default judgment against the employee. On June 17, 2002, because he had located the employee, the injured party again withdrew his motion for default judgment against her, and served her with actual notice to appear at trial.

¶ 5 The first trial was held September 9–11, 2002. Prior to trial, the employer stipulated that the employee was intoxicated at the time of the accident and that her intoxication was the cause of the accident. The employee did not appear, and the trial court granted a default judgment against her.[4] At the conclusion of the trial, the jury entered a finding that the employee was not acting within the scope of employment at the time she became intoxicated and caused the accident with the injured party. On September 24, 2002, the trial court entered the journal entry of judgment. On October 4, 2002, the injured party moved for a judgment notwithstanding the verdict and a new trial. Both motions were denied by journal entry on

November 8, 2002. On December 6, 2002, the injured party filed his petition in error.

¶ 6 On January 9, 2003, the trial court held a hearing for assessment of damages against the employee. The employee did not appear at the hearing. The employer's counsel did appear, but did not participate in the proceedings. On February 7, 2003, the trial court filed a journal entry of judgment assessing damages against the employee in the amount of $650,000 in compensatory damages and $650,000 in punitive damages.[5]

¶ 7 On September 18, 2003, the cause was assigned to the Court of Civil Appeals.[6] On February 17, 2004, the Court of Civil Appeals, in an unpublished opinion, reversed the decision of the trial court, finding that no evidence presented at trial indicated that the employee had deviated from her delivery route or was using the van for her own purposes. Therefore, the only reasonable conclusion that could be drawn was that she was acting within the scope of employment at the time of the collision and that the employer was liable, as a matter of law, through the doctrine of *respondeat superior*. The Court of Civil Appeals remanded the cause for a new trial on damages. On March 9, 2004, the employer filed its petition for certiorari, and it was denied on April 19, 2004. Mandate was issued on April 30, 2004.

¶ 8 On October 6, 2004, the cause was transferred to the trial court for a new trial on damages. After several motions *in limine* filed by both parties, on November 10, 2005, the trial court entered an order striking the injured party's claim for punitive damages against the employer, and then certified a petition for certiorari of the interlocu-

---

4. The trial court repeatedly stated to both parties' counsel that the employee was in default and therefore, liable, and that damages against her would be assessed at a hearing after the trial's conclusion. The jury was instructed not to consider her liability or what damages should be assessed against her. Jury Instruction 4.a, Record p. 428 provides:

> You are instructed that the Court has made certain decisions regarding Defendant, Laura Konelick. What damages, if any, which should be assessed against her is for the Court's deliberation and not a matter for your consideration.

The journal entry of judgment entered against the employee, Record p. 590, provides in pertinent part:

> ... Defendant, Laura E. Konelick, failed to appear at Pretrial or Trial on September 9, 2003, or otherwise plead and upon motion of the Plaintiff was declared in default in accordance with Rule 5, Rules for the District Courts of Oklahoma....

5. The injured party had asked for $750,000 in compensatory damages and $1,500,000 in punitive damages.

6. The cause was numbered 98,609.

tory order.[7]  On March 28, 2006, we denied the petition for certiorari.

¶ 9 The second trial was held on December 11–12, 2005.  On December 12, 2005, the jury awarded the injured party $6,100 in property damages and $75,000 in personal injury damages.  On February 16, 2007, the trial court filed its journal entry of judgment.  On March 16, 2007, the employer filed its petition in error, and on March 19, 2007, the injured party filed his petition in error.  The parties then filed countermotions to retain.  On April 6, 2007, the appeals were consolidated.[8]  On May 30, 2007, we granted the employer's motion to retain.  The briefing cycle was completed on January 28, 2008.

## I.

### THE COURT OF CIVIL APPEALS' FINDING THAT THE EMPLOYER IS LIABLE AS A MATTER OF LAW FOR THE ACCIDENT THROUGH THE DOCTRINE OF *RESPONDEAT SUPERIOR* IS THE LAW OF THE CASE.

■ ¶ 10 The employer argues that the Court of Civil Appeals' determination in the first appeal that it was liable under the doctrine of *respondeat superior* was erroneous.  The injured party responds that the Court of Civil Appeals' finding is the law of the case and does not meet any of the exceptions to that doctrine.

■ ¶ 11 Determinations made on a prior appeal of a cause are *res judicata*,[9] and the decision of the appellate court on an issue of law becomes the law of the case once the decision is final and unreversed, in all subsequent stages.[10]  It is immaterial whether the final decision is made by the Court of Civil Appeals or this Court.  When an issue has been presented to the Court of Civil Appeals, and a decision is reached on that issue, the first determination becomes conclusive and cannot be re-examined once it is final.  The sole remedy available from an erroneous decision of that Court is the writ of certiorari.[11]

■ ¶ 12 No question of law expressly decided or impliedly determined on a former appeal can be reversed on a second appeal between the same parties in regard to the same subject matter.[12]  This doctrine is a rule of judicial economy designed to prevent an appellate court from twice having to decide the same issue.[13]  Whether the issue was wrongfully or rightfully decided is not to be determined.  Once settled on appeal, the appellate court will not review the issue on the second appeal.[14]

■ ¶ 13 The exception to the doctrine of law of the case is that the doctrine is not applied if the prior decision is palpably erroneous and this Court is convinced that failure to reverse it will result in a gross or manifest

7. The cause was numbered 103,058.

8. The injured party's appeal, numbered 104,434, was consolidated into the instant cause.

9. *Res judicata* is a Latin phrase that translates to "a thing adjudicated." *Ezrin v. Stack*, 281 F.Supp.2d 67, 70 (D.D.C.2003). *Res judicata*, also known as claim preclusion, prevents the relitigation of previously adjudicated claims, or those claims which could have been raised, but were not, which have been subject to a final judgment on the merits. *Miller Dollarhide, P.C. v. Tal*, 2006 OK 27, ¶ 8 fn. 11, 174 P.3d 559.

10. *Mehdipour v. Holland*, 2000 OK 22, ¶ 8, 18 P.3d 339; *Cavett v. Peterson*, 1984 OK 59, ¶ 14, 688 P.2d 52; *In re. Estate of Severns*, 1982 OK 64, ¶ 5, 650 P.2d 854.

11. *Mehdipour v. Holland*, see note 10, supra. Rule 1.171, Oklahoma Supreme Court Rules, 12 O.S.2001, App. 1 provides:

Each division of the Court of Civil Appeals shall have power to determine or otherwise dispose of any case assigned to it by the Supreme Court, and its decision in the case, when final, shall be neither appealable to the Supreme Court nor be subject to re-examination by another division of the Court of Civil Appeals.

12. *Dean v. Multiple Injury Trust Fund*, 2006 OK 78, ¶ 6, 145 P.3d 1097; *Read v. Read*, 2001 OK 87, ¶ 16, 57 P.3d 561; *In re. Estate of Severns*, see note 10, supra.

13. *Dean v. Multiple Injury Trust Fund*, see note 12, supra; *In re. Estate of Severns*, see note 10, supra.

14. *Dean v. Multiple Injury Trust Fund*, see note 12, supra; *Reed v. Robinson*, 1923 OK 645, ¶ 6, 219 P. 296.

injustice.[15] This exception is one of limited application and is employed only in the most extreme circumstances.[16]

¶ 14 The employer renews its argument that the employee was not within the scope of her employment at the time of the accident because she may have deviated from her route to stop to drink alcohol. The Court of Civil Appeals found that there was undisputed testimony that the employee was traveling from her last delivery stop back to the employer's garage at the time of the accident and that there was no evidence presented by the employer that the employee deviated from her route or was using her vehicle for her own purposes at the time the accident occurred.[17] The employer also would have us revisit its argument that the employee's violation of its policy against driving while intoxicated removed her from the scope of employment. The Court of Civil Appeals addressed this argument in its opinion, and found that the employee was engaged in an act for her employer, and was therefore within the scope of her employment.[18]

¶ 15 The Court of Civil Appeals rendered a final decision in the first appeal between these parties on this matter that, as a matter of law, the employer was liable under the doctrine of *respondeat superior* because the employee was acting within the scope of her employment at the time the accident occurred. We do not find that the final decision of the Court of Civil Appeals was palpably erroneous and will result in a gross or

manifest injustice. Therefore, this conclusion of law is the law of the case, and we may not disturb it.

## II.

## THE TRIAL COURT ABUSED ITS DISCRETION IN STRIKING THE INJURED PARTY'S CLAIM FOR PUNITIVE DAMAGES.

■ ¶ 16 In motion argument before the second trial, the employer requested that the trial court strike the injured party's claim for punitive damages. The employer argued that it did not condone, adopt, or endorse the employee's actions, and was therefore not liable for punitive damages under the doctrine of *respondeat superior*. The injured party responded that the employer was liable for punitive damages through *respondeat superior* and that the issue should be submitted to the jury. The trial court struck the injured party's claim and held:

... In looking at the factual basis and understanding that the Court has found that Ms. Konelick was acting in the scope of her employment, I cannot make the next leap that I necessarily have to find that Aramark is liable for punitive damages ... I cannot find that there could be found by a jury any willful conduct on the part of the corporation itself, even though it is the employer of the defendant that has already been found to have punitive damages ... I know there's employer liability because

15. *Dean v. Multiple Injury Trust Fund*, see note 12, supra at ¶ 7; *Tibbetts v. Sight 'n Sound Appliance Centers, Inc.*, 2003 OK 72, ¶ 16, 77 P.3d 1042; *Cinco Enterprises, Inc. v. Benso*, 1999 OK 80, ¶ 11, 995 P.2d 1080; *Severson v. Roberts*, 1946 OK 94, ¶ 6, 168 P.2d 615.

16. *Worsham v. Nix*, 2006 OK 67, ¶ 29, 145 P.3d 1055.

17. The Court of Civil Appeals noted that evidence that an employee was driving an employer's vehicle at the time of the accident creates a rebuttable presumption that the employee was acting within the scope of employment, and that to rebut the presumption, the employer must present contrary evidence. *Pollard v. Grimes*, 1949 OK 225, ¶ 10, 210 P.2d 778; *Stumpf v. Montgomery*, 1924 OK 360, ¶ 0, 226 P. 65.

18. The opinion cited our decision in *N.H. v. Presbyterian Church*, 1999 OK 88, ¶ 14, 998 P.2d

592, where we held that even a willful assault can be within the scope of employment if: 1) the act is fairly and naturally incident to the employer's business; 2) the act occurs while the employee is engaged in an act for the employer; or 3) the assault arises from a natural impulse growing out of or incident to the attempt to complete the master's business.

The question of whether an act was done within the scope of employment is usually a jury question, except in cases where only one reasonable conclusion can be drawn from the facts, in which case, it is a matter of law. *Baker v. Saint Francis Hosp.*, 2005 OK 36, ¶ 16, 126 P.3d 602; *Carswell v. Oklahoma State Univ.*, 1999 OK 102, ¶ 19, 995 P.2d 1118; *Nail v. City of Henryetta*, 1996 OK 12, ¶ 13, 911 P.2d 914; *Brayton v. Carter*, 1945 OK 289, ¶ 6, 163 P.2d 960.

(sic) *respondeat superior*, but not for punitive damages.... [19]

■■■■ ¶17 All relevant evidence is admissible.[20] Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.[21] The trial court has broad discretion in determining if the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice, and a reviewing court will not overturn the trial court's ruling unless there is clear abuse of discretion.[22] Error may not be predicated on a ruling that excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to the trial court by offer.[23] A court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law.[24]

¶18 The Restatement (Second) of Torts § 909 provides that punitive damages may be awarded against an employer because of an employee's conduct only if: 1) the employer authorized the doing and manner of the act; 2) the employer was reckless in employing an unfit employee; 3) the employee was employed in a managerial capacity and acting in the scope of employment; or 4) the employer ratified or approved the act.[25] Florida law requires willful and wanton conduct by the employee and some fault on the part of the employer in order to subject an employer to

---

**19.** Transcript of Hearing on Application for Leave to Amend Petitions and Motions in Limine, November 10, 2005, p. 28–30. The Order and Certification for Immediate Interlocutory Appeal, January 12, 2006, Record, p. 870 provides in pertinent part:

> ... IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that summary disposition and judgment is hereby entered, in favor of Defendant, Aramark Refreshment Services, Inc., and against Plaintiff, Donald Bierman, striking Bierman's claim for punitive damages against Defendant, Aramark Refreshment Services, Inc....

**20.** Title 12 O.S.2001 § 2402 provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Oklahoma, by statute or by this Code. Evidence which is not relevant is not admissible.

**21.** Title 12 O.S.2001 § 2403 provides in pertinent part:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise....

**22.** *Lerma v. Wal–Mart Stores, Inc.*, 2006 OK 84, ¶32, 148 P.3d 880; *Myers v. Missouri Pacific R.R., Co.*, 2002 OK 60, ¶34, 52 P.3d 1014; *Robinson v. Borg–Warner Protective Servs.*, 2001 OK 59, ¶14, 31 P.3d 1041; *Tansy v. Dacomed Corp.*, 1994 OK 146, ¶31, 890 P.2d 881.

**23.** Title 12 O.S.2001 § 2104(A)(2) provides:

> A. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and:
> ...

> 2. If the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

**24.** *TAL Technologies, Inc. v. L.D. Rhodes Oil Co.*, 2000 OK 38, ¶14, 4 P.3d 1256.

**25.** Restatement (Second) of Torts § 909 (1979) provides:

> Punitive damages can be properly awarded against a master or other principal because of an act by an agent if, but only if:
> (a) the principal or a managerial agent authorized the doing and the manner of the act; or
> (b) the agent was unfit and the principal or managerial agent was reckless in employing or retaining him; or
> (c) the agent was employed in a managerial capacity and was acting in the scope of employment; or
> (d) the principal or a managerial agent of the principal ratified or approved the act.

The Restatement (Second) of Agency § 217C (1957) is substantially similar to this section. Several states have adopted these standards. *See White v. Ultramar, Inc.*, 21 Cal.4th 563, 88 Cal. Rptr.2d 19, 981 P.2d 944, 951 (1999); *Smith's Food & Drug Centers v. Bellegarde*, 114 Nev. 602, 958 P.2d 1208, 1214 (1998); *Hartford Accident & Indemnity Co. v. American Red Ball Transit Co., Inc.*, 262 Kan. 570, 938 P.2d 1281, 1283–1284 (1997); *Albuquerque Concrete Coring Co., Inc. v. Pan Am World Services, Inc.*, 118 N.M. 140, 879 P.2d 772, 777 (1994); *Shupak v. New York Life Ins. Co.*, 780 F.Supp. 1328, 1344 (D.Mont.1991); *Loughry v. Lincoln First Bank, N.A.*, 67 N.Y.2d 369, 502 N.Y.S.2d 965, 494 N.E.2d 70, 74 (1986); *Enright v. Lubow*, 202 N.J.Super. 58, 493 A.2d 1288, 1301 (Ct.App.Div.1985); *Briner v. Hyslop*, 337 N.W.2d 858, 867 (Iowa 1983); *Condict v. Condict*, 664 P.2d 131, 136 (Wyo.1983); *Purvis v. Prattco, Inc.*, 595 S.W.2d 103, 104 (Tex.1980).

vicarious liability for punitive damages.[26] The trial court appears to have found one or both of these standards to be controlling, but neither Restatement (Second) of Torts § 909 nor the Florida standard has been adopted in Oklahoma.[27]

¶ 19 We would have to overrule a myriad of cases to reach the result urged by the employer.[28] Under Oklahoma law, an employer may be held vicariously liable for the punitive damages arising out of an employee's act if: 1) a master/servant relationship exists between the employer and employee; and 2) the act was committed while the employee was acting within the scope of employment.[29] Punitive or exemplary damages may be assessed against an employer for an employee's act under the doctrine of *respondeat superior*.[30] There is no requirement that an employer participate in or ratify the conduct of an employee to be liable for punitive or exemplary damages under the doctrine of *respondeat superior*.[31]

¶ 20 Here, it had already been established that the employee was liable for punitive damages and that the doctrine of *respondeat superior* was applicable to the employer.[32] The trial court struck the injured party's claim based on an erroneous view of Oklahoma law on liability for punitive damages through *respondeat superior*. The trial court's ruling prevented the injured party from seeking punitive damages, affecting a substantial right. Therefore, the trial court abused its discretion by striking the claim, and the injured party's claim for punitive damages should have been presented to the jury.

## III.

## THE TRIAL COURT DID NOT ERR BY REFUSING TO INCLUDE JURY INSTRUCTIONS ON MORTALITY TABLES AND AGGRAVATION OF A PRE-EXISTING CONDITION.

¶ 21 The injured party argues that the trial court erred by refusing to instruct the jury on mortality tables and aggravation of a pre-existing condition in the second trial. The employer responds that the rulings on jury instructions were not erroneous.

¶ 22 Instructions are explanations of the law of a case enabling a jury to better understand its duty and to arrive at a correct conclusion.[33] When reviewing allegedly erroneous jury instructions, this Court

**26.** *Schropp v. Crown Eurocars, Inc.,* 654 So.2d 1158, 1159 (Fla.1995).

**27.** Some states have also declined to adopt Rest. (2d) Torts § 909. *See Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn,* 184 Ariz. 120, 907 P.2d 506, 515 (Ct.App.1995); *Dean Witter Reynolds, Inc. v. Genteel,* 346 Pa.Super. 336, 499 A.2d 637, 642 (1985); *Embrey v. Holly,* 293 Md. 128, 442 A.2d 966, 975 (1982).

**28.** *Sides v. John Cordes, Inc.,* 1999 OK 36, ¶ 15 fn. 16, 981 P.2d 301; *Jordan v. Cates,* 1997 OK 9, ¶ 9, 935 P.2d 289; *Brown v. Ford,* 1995 OK 101, ¶ 12, 905 P.2d 223; *Rodebush v. Oklahoma Nursing Homes, Ltd.,* 1993 OK 160, ¶ 24 fn. 8, 867 P.2d 1241; *Dayton Hudson Corp. v. American Mutual Liability Ins. Co.,* 1980 OK 193, ¶ 13 fn. 19, 621 P.2d 1155; *Kurn v. Radencic,* 1943 OK 295, ¶¶ 6–7, 141 P.2d 580; *McDonald v. Bruhn,* 1942 OK 175, ¶ 8, 126 P.2d 986; *Schuman v. Chatman,* 1938 OK 605, ¶ 19, 86 P.2d 615; *Russell–Locke Super-Service Inc. v. Vaughn,* 1935 OK 90, ¶ 22, 170 Okla. 377, 40 P.2d 1090; *Holmes v. Chadwell,* 1934 OK 417, ¶ 8, 36 P.2d 499; *Hunt–Murry Co. v. Gibson,* 1932 OK 342, ¶ 14, 11 P.2d 123; *Mayo Hotel Co. v. Danciger,* 1930 OK 147, ¶ 0, 288 P. 309; *Atchison, T.S. & F. Ry. Co. v. Vosburg,* 1928 OK 431, ¶ 0, 132 Okla. 196, 270 P. 58.

**29.** *Jordan v. Cates,* see note 28, supra; *Rodebush v. Oklahoma Nursing Homes, Ltd.,* see note 28, supra; *Russell–Locke Super-Service Inc. v. Vaughn,* see note 28, supra; *Holmes v. Chadwell,* see note 28, supra.

**30.** *Jordan v. Cates,* see note 28, supra; *Sides v. John Cordes, Inc.,* see note 28, supra; *Dayton Hudson Corp. v. American Mutual Liability Ins. Co.,* see note 28, supra; *Kurn v. Radencic,* see note 28, supra; *McDonald v. Bruhn,* see note 28, supra; *Schuman v. Chatman,* see note 28, supra; *Holmes v. Chadwell,* see note 28, supra.

**31.** *Kurn v. Radencic,* see note 28, supra at ¶ 6; *Schuman v. Chatman,* see note 28, supra; *Holmes v. Chadwell,* see note 28, supra.

**32.** The trial court did not take issue with this finding and, in motion hearing before the second trial, noted: "I agree (the employee's) behavior was willful and wanton and full of need for punitive damages...." Transcript of Hearing on Application for Leave to Amend Petitions and Motions in Limine, see note 24, supra at 18.

**33.** *Taliaferro v. Shahsavari,* 2006 OK 96, ¶ 25, 154 P.3d 1240; *Smicklas v. Spitz,* 1992 OK 145, ¶ 11, 846 P.2d 362; *Midland Valley R.R. Co. v. Pettie,* 1945 OK 259, ¶ 15, 162 P.2d 543.

must consider the instructions as a whole.[34] We look to whether the instructions reflect the law on the relevant issue, not whether the instructions were perfect.[35] A judgment will not be disturbed on appeal unless it appears reasonably evident that the jury was misled by the allegedly erroneous instruction.[36] Title 20 O.S.2001 § 3001.1 provides:

No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

As we held in *Woodall v. Chandler Material Co.*, 1986 OK 4, ¶ 13, 716 P.2d 652: "The test upon review of an instruction improperly given or refused is whether there is a probability that the jurors were misled and thereby reached a different result than they would have reached but for the error." [37]

### A. Instruction on Aggravation of Pre-existing Condition

¶ 23 The injured party requested the inclusion of Oklahoma Uniform Jury Instructions–Civil (OUJI–Civ.), Instruction 4.10, which provides:

MEASURE OF DAMAGES-AGGRAVATIONS OF PRE–EXISTING CONDITION

A person who has a condition or disability at the time of an injury is entitled to recover damages for any aggravation of such pre-existing condition or disability directly caused by the injury. This is true even if the person's condition or disability made him more susceptible to the possibility of injury than a normally healthy person would have been, and even if a normally healthy person probably would not have suffered any substantial injury.

When a pre-existing condition or disability is so aggravated, the damages as to such condition or disability are limited to the additional injury caused by the aggravation.

Throughout this cause, the injured party has alleged that the accident caused him to suffer severe, persistent tinnitus.[38] He admitted in testimony that he had suffered occasional, minor tinnitus before the accident, due to his career as an Air Force pilot. He contended at the second trial that the accident exacerbated his pre-existing condition of tinnitus. The employer argued that the evidence presented by the injured party was of a claim for a new, debilitating condition, not an aggravation of his pre-existing condition. The trial court denied the injured party's request. The jury returned a verdict awarding the injured party $75,000 in compensatory damages for personal injury.

¶ 24 We find that, by the standard announced in *Woodall*, there is not a probability that the jury would have reached a different result if it had been given an instruction on the aggravation of a pre-existing condition. Therefore, the trial court did not err by denying the injured party's request to include OUJI–Civ. 4.10.

### B. Instruction on Life Expectancy

¶ 25 The injured party also requested the inclusion of OUJI–Civ. 5.12, which provides:

---

**34.** *Myers v. Missouri Pacific R.R. Co.*, see note 22, supra at ¶ 29; *Dutsch v. Sea Ray Boats, Inc.*, 1992 OK 155, ¶ 7, 845 P.2d 187; *Messler v. Simmons Gun Specialties, Inc.*, 1984 OK 35, ¶ 25, 687 P.2d 121.

**35.** *Taliaferro v. Shahsavari*, see note 33, supra; *Myers v. Missouri Pacific R.R. Co.*, see note 22, supra; *Nealis v. Baird*, 1999 OK 98, ¶ 15, 996 P.2d 438; *Dutsch v. Sea Ray Boats, Inc.*, see note 34, supra.

**36.** *Myers v. Missouri Pacific R.R. Co.*, see note 22, supra; *Messler v. Simmons Gun Specialties, Inc.*, see note 34, supra; *Lee v. Volkswagen of America*, 1984 OK 48, ¶ 34, 688 P.2d 1283.

**37.** *Taliaferro v. Shahsavari*, see note 33, supra; *Myers v. Missouri Pacific R.R. Co.*, see note 22, supra; *Dutsch v. Sea Ray Boats, Inc.*, see note 34, supra.

**38.** Tinnitus is defined as: "a sound in one ear or both ears, such as buzzing, ringing, or whistling, occurring without an external stimulus and usually caused by a specific condition, such as an ear infection, the use of certain drugs, a blocked auditory tube or canal, or a head injury." The American Heritage Medical Dictionary (2007).

MORTALITY TABLES-EXPLANATION

According to life expectancy tables [ (admitted in evidence)/(it is agreed that) ] the life expectancy of a [male/female] person of the age of ____ years is ____ years. This figure is not conclusive. It is the average life expectancy of persons who have reached that age. This figure may be considered by you in connection with other evidence relating to the probable life expectancy of [Plaintiff/Decedent], including evidence of [his/her] occupation, health, habits and other activities.

The trial court denied the request on the grounds that the instruction was to be given along with other evidence on life expectancy, and no such evidence was given during the trial. The trial court permitted the injured party's counsel to use a stipulated life expectancy figure in his closing arguments.[39]

¶ 26 We find that, by the standard announced in *Woodall,* there is not a probability that the jury would have reached a different result if it had been given an instruction on mortality tables. Therefore, the trial court did not err by denying the injured party's request to include OUJI–Civ. 5.12.

### *CONCLUSION*

¶ 27 It is undisputed that the employee was assessed punitive damages for causing the accident. It is also undisputed that the employee was employed by the employer at the time of the accident. That the employer is liable for the accident under the doctrine of *respondeat superior* is the law of the case. Oklahoma law provides that an employer may be liable for punitive damages through the doctrine of *respondeat superior.* The trial court abused its discretion by refusing to submit the issue of punitive damages to the jury in the second trial based on its incorrect reading of Oklahoma law. However, the trial court did not err by refusing to

include OUJI–Civ Instructions 4.10 and 5.12. We therefore reverse the judgment of the trial court and remand the cause for a new trial solely on the issue of punitive damages.

**TRIAL COURT AFFIRMED IN PART; REVERSED IN PART. CAUSE REMANDED FOR A NEW TRIAL SOLELY ON THE ISSUE OF PUNITIVE DAMAGES.**

EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, TAYLOR, COLBERT, REIF, JJ., concur.

WINCHESTER, C.J., concurs in part, dissents in part.

---

**39.** Transcript of Jury Trial, December 12, 2005, Record p. 204 provides:

THE COURT: And for the record, during the discussion we had in my office regarding the instructions I advised them that I did not—had not ever had it requested in a non death case and felt that because the instruction describes that the instruction would be given

along with other evidence of life expectancy and there was no other evidence presented, other than the stipulation in the Pretrial Order, that a jury instruction would not be appropriate but gave Mr. Haynes leave if he wished to use the life expectancy time that had been stipulated to in his closing argument should he wish to do so.