Question Submitted by: The Honorable Tony Boevers, Construction Industries Board
2017 OK AG 9
Decided: 09/06/2017
Oklahoma Attorney General Opinions

Cite as: 2017 OK AG 9, __ __

 
¶0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following questions:
1. When is a subcontractor required to register as a roofing contractor under the Roofing Contractor Registration Act?
2. Is an entity that merely supplies temporary labor for roofing jobs required to register as a roofing contractor under the Roofing Contractor Registration Act? 
I.
Background
¶1 The Roofing Contractor Registration Act (the "Act") provides a comprehensive registration scheme for Oklahoma's roofing industry. See 59 O.S.2011 & Supp.2016, §§ 1151.1-1151.29. It both defines what entities qualify as roofing contractors, see 59 O.S.Supp.2016, § 1151.2(18), and imposes various administrative and registration requirements on those entities. See id. § 1151.3(A) (requiring that "[a]ll roofing contractors shall be registered annually by the Board").
¶2 The Act broadly defines a "roofing contractor" as:
any person, including a subcontractor and nonresident contractor, engaged in the business of commercial or residential roofing contractor work, or who himself or herself, or through another, attempts to or advertises, holds himself or herself out as having, or purports to have, the capacity to undertake roofing contractor work, or offers to engage in or solicits roofing installation-related services, including construction, installation, renovation, remodeling, reroofing, repair, maintenance, alteration and waterproofing, unless specifically exempted in the Roofing Contractor Registration Act.
59 O.S.Supp.2016, § 1151.2(18). The Act further defines "roofing contractor work" as "the installation, fabrication or assembly of equipment or systems included in roofing systems as defined in the International Building Code and the International Residential Code," and as roofing construction work, which includes "installation, renovation, remodeling, reroofing, reconstructing, repair, maintenance, improvement, alteration, and waterproofing[.]" Id. § 1151.2(19). As used in the Act, "person" means "any natural person, firm, limited liability company, trust, association, other legal entity and any organization capable of conducting business, or any combination thereof acting as a unit." Id. § 1151.2(8). Accordingly, a "roofing contractor" can be a natural person or a business entity.
¶3 Importantly, the Act also identifies those who are explicitly not roofing contractors. See 59 O.S.Supp.2016, § 1151.2(18)(a)-(d); see also id. § 1151.9(B) (providing for additional exemptions from the Act). For instance, persons who (i) are engaged only in demolition or cleanup of construction sites, (ii) work only on their own or a relative's property without compensation, or (iii) act as handymen that perform roofing work as a part of other repair work and perform no more than two roofing jobs per year, are not roofing contractors and therefore not subject to the Act. Id. § 1151.2(18)(a), (c), (d). Likewise, and of particular relevance to your questions, "a person working under the direct supervision of the roofing contractor who is hired either as an employee, day laborer, or contract laborer whose payment, received in any form, from the roofing contractor is subject to self-employment tax" is not a roofing contractor. Id. § 1151.2(18)(b).
¶4 Those who qualify as "roofing contractors" must register with the Construction Industries Board (the "Board") before engaging in roofing contractor work in Oklahoma. 59 O.S.Supp.2016, § 1151.3(A)-(B). Roofing contractors also must pay taxes due in Oklahoma, utilize valid written contracts when engaging in roofing contractor work, and maintain adequate workers' compensation and liability insurance coverage. See 59 O.S.2011 & Supp.2016, §§ 1151.7, 1151.5(C)(4), 1151.22, 1151.23. If a roofing contractor wishes to engage in "commercial roofing contractor work" (as distinct from "residential roofing contractor work"), the contractor must first pass a commercial roofing examination and apply for and receive a "commercial roofer endorsement" from the Board. 59 O.S.Supp.2016, § 1151.25; see also id. § 1151.10(C).
II. Discussion
A. Under what circumstances does the Roofing Contractor Registration Act require a subcontractor to register with the Construction Industries Board as a roofing contractor? 
¶5 As explained above, the Act's registration requirement applies only to "roofing contractors," see 59 O.S.Supp.2016, § 1151.3, which are essentially any persons or entities-including subcontractors[1]-engaged in or offering to engage in "roofing contractor work." See id. § 1151.2(18). However, the Act excludes from the definition of "roofing contractor" any person working "under the direct supervision" of a roofing contractor as "an employee, day laborer, or contract laborer." Id. § 1151.2(18)(b). Thus, while a subcontractor is explicitly included in the Act's definition of "roofing contractor," a subcontractor who (i) is hired as a "day laborer" or "contract laborer" and (ii) works "under the direct supervision" of a roofing contractor, is not a "roofing contractor" and, accordingly, need not register with the Board. To identify which subcontractors meet this definition, we look at each of these two elements.
¶6 The first element is straightforward: the subcontractor must be hired to perform labor only as his or her contribution to the roofing project.[2] The second element-specifically, what constitutes "direct supervision"-is less clear. The term is not defined by the Act, nor is there a plainly applicable dictionary definition. See, e.g., 25 O.S.2011, § 1 ("Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears."). However, at common law the concept of direct supervision is well-developed, as it is often the key determinant in distinguishing an employee from an independent contractor. See, e.g., Page v. Harvey, 1958 OK 283, ¶ 10, 334 P.2d 782, 784.[3] For example, common law identifies an independent contractor as "one who agrees to perform a certain service without the control, supervision, or direction of his employer in all matters connected with the performance of the service except the result or product of the work." See Bouziden v. Alfalfa Elec. Co-op., Inc., 2000 OK 50, ¶ 12, 16 P.3d 450, 455. By contrast, where the employer retains the right to control and supervise the performance, the worker is considered an employee. See, e.g., Carbajal v. Precision Builders, Inc., 2014 OK 62, ¶ 5, 333 P.3d 258, 260-61 (finding worker's compensation claimant an employee where "[h]e worked as part of a crew of eight to nine people, and his supervisors . . . told him where to go, when to be there, when he could leave, and when he could go to lunch" and he "did not read blueprints or construction plans, and he did what he was told to do").
¶7 Drawing on this understanding, we conclude that the Act's use of the term "direct supervision" is properly viewed as a reference to the type of supervision and control that would distinguish a common law employee from an independent contractor. While continuous physical observation is not necessary to a finding of direct supervision, such supervision must involve the supervisor exercising some level of oversight and control over the performance of the task, not just the end result. We reach this conclusion for two reasons.
¶8 First, if "direct supervision" were to mean something like physical observation of the subcontractor's performance, the Act's use of the phrase "roofing contractor" as the supervisory entity would be unworkable in situations where the "roofing contractor" is an entity, not a person. See Rogers v. Quiktrip Corp., 2010 OK 3, ¶11, 230 P.3d 853, 859 ("When possible, different provisions must be construed together to effect a harmonious whole and give intelligent effect to each."). Specifically, the Legislature chose the term "roofing contractor"-not "qualifying party"[4]-to identify the supervisor in Section 1151.2(18)(b). From this choice, it should be understood that the Legislature meant "direct supervision" to mean something other than physical observation. By instead defining "direct supervision" in terms of the right to control the supervisee's performance, business entities are able to comply with the Act's registration scheme without having to individually register various subcontractors for each and every job, and subcontractors meeting the requirements of Section 1151.2(18)(b) may avoid having to individually register, or take the endorsement exam, apart from their employer.
¶9 Second, reading Section 1151.2(18)(b) in this way is consistent with the broad purpose of the Act. In particular, the Act is focused on establishing a clear liability structure,[5] as demonstrated by its many requirements to that effect. These include, among other things, requiring roofing contractors to provide contact information for purposes of service of process, see 59 O.S.Supp.2016, § 1151.5(C)(2); requiring non-resident contractors appoint the Secretary of State for purposes of service of process, id. § 1151.5(C)(1)(f); requiring roofing contractors to display their firm name and registration number on vehicles and signage at the job site, id. § 1151.7(2)-(4); and requiring adequate liability and workers' compensation insurance coverage for roofing contractors and those working for them. Id. § 1151.5(C)(4), (G); see also 59 O.S.2011 & Supp.2016, §§ 1151.22, 1151.23.
¶10 Defining "direct supervision" as it is used to distinguish employees from independent contractors furthers this purpose because one of the hallmarks of the employer-employee relationship is the presence of vicarious liability-i.e., the employer assuming responsibility for negligent acts of the employee. See, e.g., Bierman v. Aramark Refreshment Servs., Inc., 2008 OK 29, ¶¶ 18-19, 198 P.3d 877, 883-84.[6] In other words, by defining "supervision" this way, the statute promotes a clear liability structure: where a roofing contractor (someone already required to comply with the Act's liability scheme) directly supervises, and is therefore vicariously liable for, a laborer's work, that laborer need not separately register with the Board.[7] But where a laborer exercises a degree of control over his or her own work such that no other entity is liable for the laborer's work, the laborer must register as a roofing contractor and comply with the Act's other affirmative requirements.
¶11 Accordingly, a subcontractor engaging in "roofing contractor work" must register under the Act unless the subcontractor is hired by a roofing contractor that retains control over the physical performance of the subcontractor's work. Whether any individual subcontractor is "directly supervised" as contemplated by Section 1151.2(18)(b) will be a fact-intensive inquiry that can be resolved only on a case-by-case basis. See Bouziden, 2000 OK 50 ¶ 29, 16 P.3d at 459 ("Whether a person is considered an employee or an independent contractor depends upon the facts peculiar to each case.").
B. Does the supplying of temporary labor for roofing jobs, without more, amount to "roofing contractor work," such that entities supplying such labor are subject to the Roofing Contractor Registration Act?
¶12 As explained above, the Act defines "roofing contractors" as those broadly involved in "roofing contractor work." See 59 O.S.Supp.2016, § 1151.2(18). Specifically, "roofing contractors" include not only those who actually engage in "roofing contractor work," but also a person who "advertises, holds himself or herself out as having, or purports to have, the capacity to undertake roofing contractor work, or offers to engage in or solicits roofing-installation related services[.]" Id. Though not explicitly included in the definition of "roofing contractor work," it would not be unreasonable to read the supplying of temporary labor for a roofing job as advertising or holding oneself out (or one's firm out) as having the capacity to undertake such work, or as "offer[ing] to engage in...roofing-installation related services." But, while plausible, this is not the best interpretation as it creates conflict with other provisions of the Act. See, e.g., Sharp v. Tulsa Cty. Election Bd., 1994 OK 104, ¶ 11, 890 P.2d 836, 840 ("If two constructions are possible, this Court will prefer the one that avoids conflict between the two provisions.").
¶13 By way of example, Section 1151.22(B), which sets forth the Act's requirement that workers on a roofing job are covered by workers' compensation insurance, provides as follows:
All commercial projects shall require all individuals performing work on such projects to be covered by workers' compensation insurance as employees of the person registered under the Roofing Contractor Registration Act. However, any day laborer who can show proof of being covered by workers' compensation insurance under the temporary labor agency for whom he or she is hired-out may provide an affidavit from the temporary labor agency to meet the requirement of this section for authority to use an affidavit of exemption.
59 O.S.Supp.2016, § 1151.22(B) (emphasis added). Under a plain reading of this section, the "temporary labor agency" that hires the day laborer is a distinct entity from "the person registered under the Roofing Contractor Registration Act." But, if we were to construe an agency that provides temporary day labor for roofing jobs as, for instance, "offer[ing] to engage in...roofing-installation related services," then the agency would be required to register with the Board as a roofing contractor. If that were the case, the emphasized sentence of Section 1151.22(B) would be unnecessary, as the "temporary labor agency" and the "person registered under the Roofing Contractor Registration Act" would be one and the same.
¶14 Moreover, the Act's requirements, especially the commercial roofing endorsement process, are a poor match with the function of a temporary labor agency. For example, if merely providing temporary labor were deemed "roofing contractor work," then not only would the temporary labor agency have to register before it could provide labor to that site but, for jobs involving commercial roofing work, the temporary labor agency would also have to submit a qualifying party capable of passing the roofing endorsement exam before it could provide labor to an already registered and endorsed contractor. See 59 O.S.Supp.2016, § 1151.25(A). We do not believe the Legislature intended the Act to require such duplication of effort and the imposition of such ill-fitting regulation. See Rogers v. Quiktrip, 2010 OK 3, ¶ 11, 230 P.3d at 859 ("An absurd result cannot be presumed to have been intended by the drafters."). As such, the sole act of providing temporary labor should not be understood as part of "roofing contractor work," and thus "temporary labor agencies" are not "roofing contractors" or "subcontractors" as defined by the Act.
¶15 It is therefore the Opinion of the Attorney General that:
1. A subcontractor engaged in "roofing contractor work" must be registered under the Roofing Contractor Registration Act, unless the subcontractor is a laborer working under the direct supervision of a roofing contractor pursuant to 59 O.S.Supp.2016, § 1151.2(18)(b). "Direct supervision" means that the roofing contractor retains control over the physical performance of the subcontractor's work, but does not require continuous physical oversight.
2. The act of supplying temporary labor to a roofing job site, without more, is not "roofing contractor work" under 59 O.S.Supp.2016, § 1151.2(19). Accordingly, a "temporary labor agency," as the term is used in 59 O.S.Supp.2016, § 1151.22, need not register as a "roofing contractor" under the Roofing Contractor Registration Act.
Mike Hunter
Attorney General of Oklahoma
Ethan Shaner
Deputy General Counsel
FOOTNOTES
[1]"Subcontractor" is broadly defined to mean "one who contracts with a prime contractor, general contractor, residential contractor, project manager, property manager, another subcontractor, or another entity for roofing contractor work." 59 O.S.Supp.2016, § 1151.2(21).
[2] In addition, the laborer's payment from the roofing contractor must be "subject to the self-employment tax[.]" 59 O.S.Supp.2016, § 1151.2(18)(b).
[3] See also Restatement (Second) of Agency § 220(2) (1958) (June 2017 Update) ("In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered: (a) the extent of control which, by the agreement, the master may exercise over the details of the work; . . . (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision[.]"); see also id. cmt. g ("[I]n statutes dealing with various aspects of the relation between [master and servant], the word 'employee' has largely displaced 'servant.' In general, this word is synonymous with servant.").
[4] The Act defines "qualifying party" as the "natural person...actively engaged in the [roofing contractor work] who meets the experience and ability requirements for registration on behalf of the registrant." 59 O.S.Supp.2016, § 1151.2(12).
[5] By contrast, the primary purpose of the Act does not appear to be ensuring that roofing projects are undertaken or physically overseen by a natural person with roofing experience. For example, the Act does not require any showing of competence before one can register as a roofing contractor; an applicant need only provide a statement of its "experience and qualifications as a roofing contractor, if any." 59 O.S.Supp.2016, § 1151.5(C)(1)(a) (emphasis added); cf. id. § 1151.5(F) (listing reasons for denial of registration, none of which include an evaluation of applicant's experience). Even for those with a commercial roofer endorsement-which requires passing an exam-the Act does not require the person who passes the exam be the one who directly supervises the roofing work.
[6] See also Bouziden, 2000 OK 50 ¶ 12, 16 P.3d at 455 ("Generally, an employer is not liable for the negligent acts or omissions of an independent contractor committed in the course of performing the contracted service. This non-liability rule is based on the notion that since the employer has no right of control over the manner and method in which the service is performed, the employer is not answerable for an injury resulting from the manner in which the independent contractor carries out the details of the work.").
[7] This interpretation finds further support in Section 1151.9(5), which exempts employees from the Act without a supervision requirement, so long as they do not engage in roofing work apart from their registered employer.

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1994 OK 104, 890 P.2d 836, 65 OBJ 3055, 
Sharp v. Tulsa County Election Bd.
Discussed

 
1958 OK 283, 334 P.2d 782, 
PAGE v. HARDY
Discussed

 
2008 OK 29, 198 P.3d 877, 
BIERMAN v. ARAMARK REFRESHMENT SERVICES, INC.
Discussed

 
2010 OK 3, 230 P.3d 853, 
ROGERS v. QUIKTRIP CORP.
Discussed at Length

 
2014 OK 62, 333 P.3d 258, 
CARBAJAL v. PRECISION BUILDERS, INC.
Discussed

 
2000 OK 50, 16 P.3d 450, 71 OBJ 1753, 
BOUZIDEN v. ALFALFA ELECTRIC COOPERATIVE, INC.
Discussed at Length

Title 25. Definitions and General Provisions

 
Cite
Name
Level

 
25 O.S. 1, 
Meaning of Words
Cited

Title 59. Professions and Occupations

 
Cite
Name
Level

 
59 O.S. 1151.1, 
Short Title
Cited

 
59 O.S. 1151.2, 
Definitions
Discussed at Length

 
59 O.S. 1151.3, 
Registration Requirement - Penalties
Discussed

 
59 O.S. 1151.5, 
Application for Registration - Denial of Registration - Hearing - Qualifications
Discussed

 
59 O.S. 1151.7, 
Limitations
Cited

 
59 O.S. 1151.22, 
Workers' Compensation Insurance Coverage
Discussed at Length

 
59 O.S. 1151.25, 
Commercial Roofing Examination
Discussed