2006 OK 95

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**John Glen MADDOX, Respondent.**

**No. 4639.**

Supreme Court of Oklahoma.

Dec. 19, 2006.

Dan Murdock, General Counsel, Oklahoma Bar Association, for Complainant.

Irven R. Box, Stephen Box, Oklahoma City, Oklahoma, for Respondent.

## BAR DISCIPLINARY PROCEEDING

### KAUGER, J.

¶ 1 The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, John G. Maddox, (respondent/Maddox) with one count of professional misconduct resulting from a guilty plea on a charge of embezzlement by a public official. The Bar Association alleged that the attorney violated Rule 8.4, 5 O.S.2001 Ch. 1, App. 3–A,[1] and Rule 1.3 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A.[2] The Bar Association sought a one-year suspension and the payment of costs.[3] Upon *de novo* review, we hold that the respondent's license to practice law should be suspended for two years beginning on March 22, 2005, the date in which the respondent began a self-imposed suspension from the practice of law. The respondent is assessed the costs of this proceeding in the sum of $431.07 for payment not later than ninety days after this opinion becomes final.

## FACTS

¶ 2 In 1994, the respondent, a licensed lawyer since 1974, was elected as District Attorney for District 8. On September 10, 1999, Maddox resigned from office amidst an ongoing investigation regarding his use of a state owned automobile and his submission of travel claims. The respondent was indicted by the Multicounty Grand Jury on March 2, 2000. He acknowledged that:

> "... while driving a vehicle owned by the State of Oklahoma, I filed claims for mileage and received monies from the State for mileage on the vehicle. The law does not allow receiving funds when driving a State owned car, but only for a privately owned vehicle and the funds I received were improper and unlawful."

Maddox entered into a plea agreement and plead guilty to one count of embezzlement by a public official in violation of 21 O.S. Supp. 1999 § 341[4] on March 22, 2000, and received

1. Because the applicable rules have remained unchanged since the respondent's indictment, references are to the current version of the rules. Rule 8.4 of the Rules of Professional Conduct, 5 O.S.2001 Ch. 1, App. 3–A provides in pertinent part:

   It is professional misconduct for a lawyer to:
   (a) violate or attempt to violate the Rules of Professional Conduct ...
   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation. . . .

2. Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A provides:

   The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would be reasonably found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in

a criminal proceeding is not a condition precedent to the imposition of discipline.

3. In the initial complaint filed September 17, 2001, the Bar Association sought whatever discipline "this Court finds equitable and proper." In its brief and at the trial panel hearing, the Bar Association recommended a one-year suspension with an assessment of costs.

4. Title 21 O.S. Supp.1999 § 341 was the statute in effect at the time of indictment. It provides:

   Every public officer of the state or any county, city, town, or member or officer of the Legislature, and every deputy or clerk of any such officer and every other person receiving any money or other thing of value on behalf of or for account of this state or any department of the government of this state or any bureau or fund created by law and in which this state or the people thereof, are directly or indirectly interested, who either:
   First: Appropriates to his own use, or to the use of any person not entitled thereto, without authority of law, any money or anything of

a deferred sentence, with the condition that he pay $17,404.01 in restitution to the State of Oklahoma within 30 days of the guilty plea. He was placed on unsupervised probation for two years, and was disqualified from holding public office in the State of Oklahoma. Immediately after he resigned from office, the respondent worked on construction for about nine months until the middle of the year 2000, when he began assisting another lawyer with various matters.

¶ 3 On September 8, 2000, six months after the indictment was returned, the General Counsel for the Oklahoma Bar Association wrote to the respondent to tell him that an investigation was being opened based on the circumstances surrounding his indictment. The letter noted that the respondent "may" have committed actions which would constitute a violation of the Rules of Professional Conduct. Maddox was given twenty days to respond to the letter and he did so on October 2, 2000, admitting the facts which supported his plea agreement.

¶ 4 Nearly one year later, on August 27, 2001, a complaint was filed with the Chief Justice of the Supreme Court. The respondent promptly answered the complaint on September 14, 2001, and both pleadings were filed with the Clerk of the Supreme Court on September 17, 2001. By May 15, 2002, the two year deferred sentence had expired, Maddox had fully complied with all the im-

posed conditions and the record was expunged by order of the court.

¶ 5 On March 22, 2005, the respondent began a self-imposed suspension from the practice of law in anticipation of a hearing on disciplinary proceedings before the trial panel [5]. Five years and five months after Maddox was indicted, the matter came before the Professional Tribunal Panel (trial panel) on January 17, 2006. On February 8, 2006, the trial panel, apparently without considering the delay in these proceedings, recommended that Maddox be suspended for two years and one day and that he be assessed the costs of this proceeding. The Bar Association filed its application to assess costs on February 22, 2006. Finally, almost seven years after the indictment was filed, the matter was assigned to this office on December 7, 2006.

¶ 6 **THE RESPONDENT'S CONDUCT WARRANTS A TWO YEAR SUSPENSION AND THE IMPOSITION OF COSTS BEGINNING RETROACTIVELY FROM MARCH 22, 2005, THE DATE IN WHICH THE RESPONDENT BEGAN A SELF-IMPOSED SUSPENSION FROM THE PRACTICE OF LAW.**

¶ 7 The trial panel recommended two years and a day suspension. The Bar Association concedes that it failed to prosecute this action in a prompt and timely manner and, as a

value received by him as such officer, clerk, or deputy, or otherwise, on behalf of this state, or any subdivision of this state, or the people thereof, or in which they are interested; or Second: Receives, directly or indirectly, any interested, profit or perquisites, arising from the use or loan of public funds in his hands or money to be raised through his agency for state, city, town, district, or county purposes; or Third: Knowingly keeping any false account, or makes any false entry or erasure in any account of or relating to any moneys so received by him, on behalf of the state, city, town, district or county, or the people thereof, or in which they are interested; or Fourth: Fraudulently alters, falsifies, cancels, destroys or obliterates any such account; or Fifth: Wilfully omits or refuses to pay over to the state, city, town, district or county, or their officers or agents authorized by law to receive the same, any money or interest, profit or perquisites arising therefrom, received by him under any duty imposed by law so to pay over

the same shall, upon conviction thereof, be deemed guilty of a felony and shall be punished by a fine of not to exceed Five Hundred Dollars ($500.00), and by imprisonment in the State Penitentiary for a term of not less than one (1) year nor more than twenty (20) years and, in addition thereto, the person shall be disqualified to hold office in this state, and the court shall issue an order of such forfeiture, and should appeal be taken from the judgment of the court, the defendant may, in the discretion of the court, stand suspended from such office until such cause is finally determined.

5. The precise date that the self-imposed discipline was imposed is unclear from the record. Maddox testified at the hearing that in anticipation of a hearing scheduled for March 22, 2005, he quit taking any new cases at all in early March of 2005. A letter from his employer, Thomas Morris indicates that Maddox stopped doing any legal work in March 2005, while waiting for his day in court that never came. Because the hearing that never happened was

result, it recommends the imposition of a one year suspension. Maddox argues that considering the totality of the circumstances, this cause warrants a public censure,[6] but he agrees to the imposition of costs.

¶ 8 Rule 7.1 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 3-A, provides that a lawyer who has been convicted of a crime which demonstrates unfitness to practice law regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial shall be subject to discipline regardless of pendency of an appeal.[7]

¶ 9 Rule 7.2 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 3-A requires the clerk of any court to send certified copies of the indictment or the judgment and sentence to the Chief Justice and to the General Counsel of the Oklahoma Bar Association within 5 days. Upon receipt of this documentation, the Supreme Court is mandated to suspend immediately the lawyer from the practice of law.[8] Rule 7.3 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 3-A provides the lawyer an opportunity to show cause why the suspension should be set aside. Upon good

cause shown, the Court may set aside the suspension if it appears to be in the interest of justice to do so, "due regard being had to maintaining the integrity of and confidence in the profession." [9]

¶ 10 The integrity of and confidence in the profession—therein lies the problem. This Court is faced with a dilemma. The system has not worked. Rule 7 needs to be amended. Because the respondent pled guilty and received a deferred sentence on a plea agreement, he apparently escaped Rule 7 because he was not "technically" convicted for the same acts of which had he been convicted would have resulted in an immediate suspension. This Court was not advised within 5 days of the guilty plea nor within 5 weeks or 5 months apparently because he wasn't "convicted" of the crime, even though he admitted his guilt.

¶ 11 The first news we received of the deferred sentence was September 17, 2001, when a copy of the Bar complaint was filed with the Clerk of the Supreme Court. The initial hearing before the trial panel was set for October 18, 2001, but it was continued to November 1, 2001. No hearing was held in November of 2001. Instead, on March 1,

---

scheduled for March 22, 2005, we begin his suspension from that date.

6. Although not phrased as such, the gravamen of the attorney's argument is that his due process rights have been violated. The record is clear that throughout the process, Maddox has complained about the extraordinary delay. Letters sent on his behalf to the Bar Association reflect his concern about the delay and the effect it was having on his life. *See discussion*, page 7, infra. In his brief, the attorney argues that only a public censure is necessary because of the "totality" of the circumstances. Taken collectively, the evidence reflects the attorney was waiving red flags about his due process rights and right to a speedy trial.

7. Rule 7.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1-A provides:
A lawyer who has been convicted in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal.

8. Rule 7.2, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1-A provides:

The clerk of any court within this State in which a lawyer is convicted shall transmit certified copies of the indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within (5) days after said conviction. The documents may also be furnished to the Chief Justice by the General Counsel. Such documents, whether from this jurisdiction or any other jurisdiction and sentence is based and shall suffice as the basis for discipline in accordance with these rules.

9. Rule 7.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1-A provides:
Upon receipt of the certified copies of such indictment or information and the judgment and sentence, the Supreme Court shall by order immediately suspend the lawyer from the practice of law until further order of the Court. In its order of suspension the Court shall direct the lawyer to appear at a time certain, to show cause, if any he has, why the order of suspension should be set aside. Upon good cause shown, the Court may set aside its order of suspension when it appears to be in the interest of justice to do so, due regard being had to maintaining the integrity of and confidence in the profession.

2002, the November hearing was re-set for April 9, 2002. On April 9, 2002, the hearing was continued indefinitely. Nearly three years later, on February 3, 2005, the April 9, 2002, hearing was re-set for March 22, 2005. On March 23, 2005, an order was filed striking the March 22 hearing. The hearing was finally held on January 17, 2006, with the General Counsel advising the respondent that he would recommend a one-year suspension.

¶ 12 Rule 6.6 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A, provides in pertinent part:

> "**Within ten (10) days after receiving notice of the filing of a complaint,** the Chief Master ... of the Professional Responsibility Tribunal shall select three members thereof to serve as a trial panel of Masters ..." (Emphasis supplied.)

Rule 6.7 of the Rules Governing Disciplinary Proceedings,5 O.S.2001, Ch. 1, App. 1–A, provides:

> "The Chief Master or Vice–Chief Master of the Professional Responsibility Tribunal shall notify the respondent and the General Counsel of the appointment and membership of the Trial Panel and of the time and place for hearing, **which shall not be less than thirty (30) nor more than sixty (60) days from the date of appointment of the Trial Panel.** Extension of this period may be granted by the Chief Master (or the Vice–Chief Master, in case of the unavailability of the Chief Master) for good cause shown." (Emphasis supplied.).

¶ 13 In a letter of support dated January 12, 2006, Thomas J. Morris, III, Maddox's employer, wrote to the Oklahoma Bar Association. He said that he was enclosing a copy of a letter he wrote on October 11, 2001, "since the original may have been misplaced during the ages." Indeed. Mr. Morris also observed that he had seen the respondent "grieve over" this matter, waiting, without knowing what the Oklahoma Bar Association was going to do because his day in court never came. C.D. Northcutt, a Ponca City attorney, wrote that the matter had not been handled expeditiously and that the respondent had suffered from being left in limbo. Fred Boettcher, another Ponca City attorney, noted in his letter that the Oklahoma Bar Association had moved for continuances which had unduly delayed the matter, that further proceedings were unfair and unnecessary, and that the respondent had suffered personal agony not knowing what tomorrow would bring.

¶ 14 This attorney did something really wrong. He betrayed his trust as a public official. He put gas in his pickup and charged the gas on a state credit card and then he charged for mileage. He has completed his deferred sentence. Had the matter been held in a timely manner and had we disbarred him, he would likely be eligible to apply for reinstatement. Instead, through a tragedy of errors, we now seek to impose the discipline which should have been imposed much earlier.

¶ 15 There is equal blame to share: Our failure to monitor, the Bar Association's failure to prosecute, and the respondent's lawyer's lack of reasonable diligence in representation. These are the facts. They cannot be varnished, spun, or obliterated. There has been a breakdown in the system. This does not meet the constitutional requirements of due process,[10] nor of the constitutional right to a speedy trial.[11] Limbo

---

10. The Oklahoma Constitution provides that no person shall be deprived of life, liberty, or property, without due process of law. The Okla. Const. art. 2 § 7 provides:

    No person shall be deprived of life, liberty, or property, without due process of law.

    Fundamentals of due process are applicable to lawyer disciplinary proceedings. *State ex rel. Oklahoma Bar Ass'n v. Wolfe,* 1997 OK 47, ¶ 20, n. 25, 937 P.2d 988; *State ex rel. Oklahoma Bar Ass'n v. Eakin,* 1995 OK 106, ¶ 15, 914 P.2d 644. See, *State ex rel. Oklahoma Bar Ass'n v. Minter,* 2001 OK 69, ¶ 23, fn. 49, 37 P.3d 763; *State ex rel. Oklahoma Bar Ass'n v. Lobaugh,* 1988 OK 144, ¶ 15, 781 P.2d 806. Due process in disciplinary hearings contemplates a fair and open hearing before a trial panel with notice and an opportunity to present evidence and argument, representation by counsel, if desired, compulsory process for obtaining favorable witnesses, information concerning the claims of the opposing party, reasonable opportunity to be heard, and the right to confront the unfavorable witnesses.

11. The right to a speedy and certain remedy without delay, in a civil proceeding, is one of the rights enjoyed by the citizens of this State.

does not maintain the integrity and confidence of the profession, it ignores it.

¶ 16 When it took nearly two years from the time a formal complaint was filed until a trial panel hearing was held in *State ex rel. Oklahoma Bar Ass'n v. Benefield,* 2005 OK 75, 125 P.3d 1191, the Court could not have realized that this was a common practice.[12] It must stop. In *Benefield,* there was nothing in the record to explain the excessive delay. Here, in an apparent attempt to appease the Court, General Counsel and respondent's lawyer offered an Alphonse–Gaston explanation of culpability for the delay:

1) In 1999, respondent's daughter was in a plane crash;

2) Respondent's lawyer had surgery followed by a severe infection;

3) Respondent's lawyer was on television in the Nichols and McVeigh cases and ministered to the needs of victims;

4) General Counsel's sister died and the funeral was held on the date of the hearing scheduled March 22, 2005, but the hearing was postponed until January 17, 2006.

These reasons fail to show good cause for such delay. Co-counsel for the respondent appeared at the hearing on January 17, 2006. The General Counsel's office of the Oklahoma Bar Association has almost a million dollar budget and employs four other lawyers who routinely handle disciplinary proceedings.

¶ 17 We would have agreed to the discipline imposed by the professional tribunal panel had this cause been presented in a timely and orderly manner. However, this Court is the ultimate arbiter of appropriate sanctions in bar discipline cases.[13] We may choose to reject or to accept the trial panel's recommendations.[14] We are not bound by agreed findings, conclusions of law or recommendations for discipline.[15] Rather, the ultimate responsibility for imposition of professional discipline is ours alone. The Court's review is *de novo* in considering the record presented as well as the recommendations for discipline.[16]

¶ 18 Discipline is fashioned to coincide with the discipline imposed upon other lawyers for similar acts of professional misconduct.[17] Although this Court strives to be evenhanded and fair in disciplinary matters, discipline must be decided on a case-by-case basis because each situation involves unique transgressions and mitigating factors.[18] There can be little doubt that the attorney has brought discredit upon the legal profes-

---

*Meadows v. Meadows,* 1980 OK 158, ¶ 7, 619 P.2d 598. See, also *Civil Service Commission of the City of Tulsa v. Gresham,* 1982 OK 125, ¶¶ 38–40, 653 P.2d 920. The Okla. Const. art. 2, § 6 provides:

The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

12. *In the Matter of Reinstatement of Fraley,* 2005 OK 39, 115 P.3d 842 provides another example of the Oklahoma Bar Association's disregard for procedure and this Court. In *Fraley,* the Oklahoma Bar Association unilaterally decided to bypass disciplinary proceedings and this Court altogether by arranging a letter of resignation rather than following the resignation procedure provided by the rules.

13. *State ex rel. Oklahoma Bar Ass'n v. Rennie,* 1997 OK 108, ¶ 20, 945 P.2d 494; *State ex rel. Oklahoma Bar Ass'n v. Butler,* 1992 OK 150, ¶ 9, 848 P.2d 540.

14. *State ex rel. Oklahoma Bar Ass'n v. Rennie,* see note 13, supra; *State ex rel. Oklahoma Bar Ass'n v. Wilkins,* 1995 OK 59, ¶ 12, 898 P.2d 147.

15. *State ex rel. Oklahoma Bar Ass'n v. Erickson,* 2001 OK 66, ¶ 14, 29 P.3d 550; *State ex rel. Oklahoma Bar Ass'n v. Israel,* 2001 OK 42, ¶ 13, 25 P.3d 909.

16. *State ex rel. Oklahoma Bar Ass'n v. Israel,* see note 15, supra; *State ex rel. Oklahoma Bar Ass'n v. Bolusky,* 2001 OK 26, ¶ 14, 23 P.3d 268; *State ex rel. Oklahoma Bar Ass'n v. Dershem,* 2001 OK 7, ¶ 12, 21 P.3d 639.

17. *State ex rel. Oklahoma Bar Ass'n v. Patterson,* 2001 OK 51, ¶ 29, 28 P.3d 551; *State ex rel. Oklahoma Bar Ass'n v. Eakin,* 1995 OK 106, ¶ 0, 914 P.2d 644; *State ex rel. Oklahoma Bar Ass'n v. Bolton,* 1994 OK 53, ¶ 16, 880 P.2d 339.

18. *State ex rel. Oklahoma Bar Ass'n v. Doris,* 1999 OK 94, ¶ 38, 991 P.2d 1015; *State ex rel. Oklahoma Bar Ass'n v. Rozin,* 1991 OK 132, ¶ 10, 824 P.2d 1127.

sion subjecting himself to discipline.[19] Discipline should be sufficient to persuade the attorney that such conduct will not be tolerated.[20] Mitigating circumstances may be considered in evaluating both the attorney's conduct and assessing the appropriate discipline.[21]

¶ 19 Here, the respondent has been totally cooperative with the Bar Association. Maddox has admitted his conduct and violation of the Rules and taken it upon himself to begin self imposed discipline. Furthermore, the respondent has not been previously disciplined. Given the totality of the circumstances, the respondent's license to practice law is suspended for two years beginning on March 22, 2005, the date in which the respondent began a self-imposed suspension from practicing law. The respondent is assessed the costs of this proceeding in the sum of $431.07 for payment not later than ninety days after this opinion becomes final.

## CONCLUSION

¶ 20 The nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law is solely vested in this Court.[22] Every lawyer is presented as a person worthy of competence and honesty in the performance of professional activities. It is our difficult duty to withdraw the license to practice law if necessary to protect the interest of the public, the legal profession and this tribunal.[23] Any other approach would rightly confuse or equate a lawyer's state franchise with a license to cheat the public.[24] Upon a *de novo* review of the record, we determine that the respondent's conduct warrants a two year suspension beginning on March 22, 2005, the date in which the respondent began a self-imposed

suspension from practicing law and the imposition of $431.07 in costs dues not later than ninety days after this opinion becomes final.

## RESPONDENT SUSPENDED; COSTS IMPOSED.

WATT, C.J., WINCHESTER, V.C.J., LAVENDER, HARGRAVE, KAUGER, EDMONDSON, COLBERT, JJ., concur.

OPALA, J., disqualified.

TAYLOR, J., concurring in part, dissenting in part.

While I agree with some of the concerns expressed in the majority opinion, I must dissent to the discipline imposed. I find no indication that the Respondent or his counsel ever vigorously objected to any of the delay or the process in this case. The delay was not an issue raised by either party to these proceedings at any time. The delay is not a mitigating factor. This lawyer has committed extremely grievous acts of dishonesty and has violated the public trust. The Professional Responsibility Tribunal recommended that the Respondent be suspended for two years and a day. That discipline is clearly and certainly warranted in this case and should be imposed.

19. Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A, see note 2, supra.

20. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, 1997 OK 55, ¶ 15, 938 P.2d 744.

21. *State ex rel. Oklahoma Bar Ass'n v. Southern*, 2000 OK 88, ¶ 35, 15 P.3d 1; *State ex rel. Oklahoma Bar Ass'n v. Taylor*, 2000 OK 35, ¶ 33, 4 P.3d 1242.

22. *State ex rel. Oklahoma Bar Ass'n v. Holden*, 1995 OK 25, ¶ 18, 895 P.2d 707; *State ex rel. Oklahoma Bar Ass'n v. Farrant*, 1994 OK 13, ¶ 8, 867 P.2d 1279; *Tweedy v. Oklahoma Bar Ass'n*, 1981 OK 12, ¶ 4, 624 P.2d 1049.

23. *State ex rel. Oklahoma Bar Ass'n v. Raskin*, 1982 OK 39, ¶ 22 642 P.2d 262.

24. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, see note 20, supra at ¶ 15.