KAUGER, J.:
 

 *1037
 
 ¶ 1 This retained cause presents multiple issues, one of which is when it is appropriate to appeal an indirect contempt finding. Under the facts of this cause, the respondent argues that the Court has created the set of circumstances which put him in the position of first having to completely purge the contempt (in this case a three year process) before appealing, thus violating his constitutional right of access to the courts. The remaining issues are whether the trial court: 1) improperly applied res judicata to a previous bankruptcy court proceeding; 2) improperly interpreted a separation agreement; and 3) erred in finding the respondent guilty of contempt. We hold that the respondent was not denied access to the courts, nor did the trial court err in applying res judicata, in its interpretation of the separation agreement or in finding the respondent guilty of contempt.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2 The respondent/appellant, Warren H. Ellis, Jr. (Ellis/husband) and the petitioner/appellee, Carol Lay (wife) were married on January 7, 1978, in Washington, D.C. and had two children born October 8, 1983, and March 8, 1987. On November 25, 1992, the husband and wife entered into a deed of trust note in Madison, Virginia with the wife's aunt and uncle, Carlyn and Francis Lay (the Lays). The note amount was for $77,400.00 with an interest rate of 8% per year. The monthly installments were set at $567.93 and began on December 25, 1992. If paid out at the monthly amount, the final payment would be due November 25, 2022. The purpose of the note was to purchase a parcel of land.
 

 ¶ 3 On June 27, 2000, the husband and wife entered into a separation agreement, citing irreconcilable differences. The separation agreement required the husband to pay the wife $500.00 per month spousal support beginning October 1, 2000, and terminating on October 1, 2005. The couple shared joint legal and physical custody of the children with no child support paid by either party. Each parent agreed to take one child each as a deduction on tax returns. The agreement also divided personal property, and set forth requirements for maintaining the children's health insurance.
 

 ¶ 4 The agreement also contained a clause devoted to joint indebtedness and provided that each party's obligation to the other pursuant to this clause would not be considered to be dischargeable in bankruptcy.
 

 The pertinent provision of the indebtedness clause provides that:
 

 *1038
 
 ... a. Husband shall be responsible for the following debts in every respect and shall hold Wife harmless thereon: Personal loan to [sic] Francis and Carlyn Lay in the approximate amount of $20,000.00. On the date that this debt is executed, Husband agrees to pay Wife the sum of Eight Thousand three hundred seventy and 00/100 ($8,370.00). This sum is intended to reimburse Wife for her previous payment of joint debts ...
 

 ¶ 5 On April 28, 2005, the County of Maricopa Court of Arizona granted the wife a default divorce. Apparently, on September 26, 2006, the wife filed a contempt action in the Arizona court as well because an order filed January 25, 2007, notes that the parties reached an agreement regarding the September 26, 2006, contempt and jointly ask for entry of a proposed order regarding the separation agreement that the parties entered into before the divorce. The agreed and stipulated order filed February 9, 2007, requires among other things, the husband to: 1) honor the terms of the separation agreement; 2) pay $500.00 a month for five years for spousal maintenance; and 3) reimburse the wife $8,370.00 for reimbursement of the husband's portion of joint debts previously paid by the wife.
 

 ¶ 6 The court granted the wife a judgment against the husband for $29,946.91 with 10% annual interest for spousal support until paid in full and a judgment of $11,245.00 with 10% interest for reimbursement to the wife for joint debt until paid in full. Payments towards both judgments were set in the amount of $500.00 a month. In 2008, the wife was awarded attorneys' fees and costs against the husband as well. Also in 2008, the husband filed Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Western District of Virginia.
 

 ¶ 7 At issue in the bankruptcy case was the note to the Lays, and whether it would be discharged in bankruptcy. In the bankruptcy court, the husband argued that he only owed $20,000.00 towards the Lays' loan and that he had already paid $21,000.00 towards it, thus already extinguishing his obligations regarding it all together.
 

 ¶ 8 The $20,000.00 number came from language in the settlement agreement which specifically refers to a "[p]ersonal loan to Francis and Carlyn Lay in the approximate amount of $20,000.00," even though the note was for the amount of $77,400.00. In the bankruptcy proceeding the wife testified that there was never any discussions of each of them paying a portion of the note, but rather, the husband was to pay the entire note. She testified that "[t]he note was to be totally assumed by" the husband. The wife explained that her attorney indicated that there should be a dollar amount involved to be incorporated into the separation agreement, and that she asked her husband what the amount of the debt was and he said approximately $20,000.00. Apparently, the real amount they owed at that time, after they had made several payments while married, was closer to approximately $50,000.00.
 

 ¶ 9 The husband, on the other hand, argued that he only owed $20,000.00 pursuant to the express language of the separation agreement, but that he had already mistakenly paid $21,000.00. Thus, according to the husband he had already complied with the terms of the separation agreement. The bankruptcy court judgment entered on June 23, 2008, merely states that:
 

 It is ORDERED, ADJUDGED and DECREED that the obligation of the Defendant Warren H. Ellis to hold the Plaintiff Carol A. Lay harmless from liability on the debt that she owes Francis and Carlyn Lay by virtue of a note dated on or about November 5, 1992, is non-dischargeable, the order of discharge in the above-styled chapter 7 bankruptcy case notwithstanding.
 

 ¶ 10 On April 26, 2012, the wife filed an application for registration of foreign orders in the District Court of Cleveland County. The foreign orders included a copy of her April 28, 2005, default divorce decree entered in the Superior Court in Maricopa County, Arizona, against the husband. She also included a January 25, 2007, Stipulation and Joint Motion for Entry of Order re: Confirmation of Judgments and an attached order filed February 9, 2007, and a July 16, 2008, Judgment for Attorneys' Fees and Costs. On
 
 *1039
 
 the same day, the wife also filed an application for indirect contempt citation also in the Cleveland County District Court, alleging that the husband owed:
 

 1. A debt in the amount of $30,763.19 plus interest from May 30, 2008, to present at a rate of eight per cent (8%) which was the amount she alleges she paid to the Lay's to extinguish the 1992 note;
 

 2. A judgment for spousal support arrears in the amount of $29,946.91 plus interest at a rate of ten percent (10%) from April 28, 2005, which was to be paid in monthly payments of $500.00 and if the monthly payments were not made, then the entire judgment was immediately due and payable [which equates to $34,179.53 plus accruing interest since April 25, 2012];
 

 3. A judgment in the amount of $4,400.00 for attorney's fees and costs plus interest at the statutory rate. [Apparently, he had paid $1,315.00 but has failed and refused to pay the balance plus interest.]
 

 4. Any additional attorney's fees and costs which the husband should be required to pay for the wife having to pursue what he owed her.
 

 ¶ 11 On May 10, 2012, the Cleveland County District Court entered an indirect contempt citation and set an arraignment for June 12, 2012. The husband responded with an objection to the enforcement of the Arizona orders, and he requested a hearing and stay of the collection proceedings. On July 31, 2012, the husband also filed a motion to dismiss and demurrer in response to the application and citation for indirect contempt. On November 30, 2012, the wife filed a supplemental application for indirect contempt citation arguing that in May, June, and July of 2012 the husband received $41,429.00, $14,925.00 and $17,000.00 respectively from his parents' estate and thus had the ability to purge the contempt.
 

 ¶ 12 The trial court held a hearing on February 25, 2013, regarding the contempt. The court issued an order in which it determined that the husband owed the wife $26,313.03 as of the date of the hearing, and that his lawyer was to pay $15,499.44 to the wife and her attorney, and that the husband agreed to pay $10,813.59 today, thus purging the contempt as far as the support alimony goes. The trial court also reduced the amount which the wife alleged she had already paid towards the 1992 note of $38,042.44 to a judgment. He delayed sentencing until a purge plan was submitted, but set sentencing on May 2, 2013, and he required submission of the purge plan within 20 days. [For some unexplained reason, the order was not signed until February 11, 2014, and filed that same day.]
 

 ¶ 13 On March 25, 2013, the husband filed a his proposed purge plan. Under his plan, he would pay $500.00 a month to purge his contempt. The wife responded on August 2, 2013, with her proposal to the husband's purge plan. She suggested that the order for purge be increased so that he would pay off his debt to her in three years with interest; he provide business and personal records as to the status of his company and the debt it owes to him; and the husband surrender his passport as long as the purge is owed. On July 1, 2014, the trial court issued a certified interlocutory order reflecting what the February 11, 2014, order required, but certifying the matter for immediate appeal to this Court.
 
 [1]
 

 *1040
 
 ¶ 14 The July 1, 2014, order is not in this record, but on July 25, 2014, the husband filed the appeal of it in this Court (case number 113,068). The husband filed it as a petition for certiorari, seeking review of the July 1, 2014, certified interlocutory order which found him in contempt for failing to pay a marital debt which the husband was ordered to assume, but which did not impose a sentence.
 
 [2]
 
 In 113,068, the husband alleged that the trial court erred: 1) in giving res judicata effect to an order of a Virginia bankruptcy court, and interpreting the bankruptcy court order in such a way that it was contrary to the clear intent of the parties when they entered into the separation agreement; and 2) in finding the amount of debt the husband owed.
 

 ¶ 15 The wife countered that the trial court's order was not appropriate for appeal as a certified interlocutory order and that the husband has an adequate remedy which is to request the trial court to issue a sentence so that he could appeal. The Court denied the husband's petition for certiorari to review the trial court's interlocutory order by order sheet. The husband made monthly payments to purge the contempt and on March 30, 2017, the trial court issued a summary order purging contempt and determining the purge plan to be completed.
 

 ¶ 16 On April 27, 2017, the husband filed a petition in error, seeking review of the finding and order of contempt which led to the purge plan. The petition in error sets forth four specific arguments regarding how trial court erred: 1) by finding that a previous adjudication by the U.S. Bankruptcy Court that the debt in issue was non-dischargeable and res judicata as to the issues raised in contempt; 2) by declining to consider evidence that the appellant had already fully discharged his obligations under the decree; 3) by declining to consider evidence of the intent of the parties when they entered the prior Settlement Agreement; and 4) by finding indirect contempt of court. The appellant, in the petition in error, also notes that other errors may become apparent upon a full examination of the record and he "reserves the right to present such errors in a timely-filed brief."
 

 ¶ 17 In his brief, the husband argues that because this Court did not review his certified interlocutory order in case no. 113,068, he had to wait until he completed his purge plan before he got a final, appealable order which was three years after the trial court initially determined him guilty of contempt.
 
 [3]
 

 *1041
 
 Consequently, the husband argues that he was unconstitutionally denied access to Court for having to wait so long to appeal.
 
 [4]
 
 On March 20, 2018, the husband filed a motion to retain the appeal in the Supreme Court and the Chief granted the motion to retain on April 20, 2018, and assigned the cause on April 23, 2018, after briefing was complete.
 

 UNDER THE FACTS OF THIS CASE, THE RESPONDENT WAS NOT UNCONSTITUTIONALLY DENIED ACCESS TO THE COURT.
 

 ¶ 18 The husband argues that having to wait until he paid out his payment plan before getting a final sentence and appealable order, he was unconstitutionally denied access to Court.
 
 [5]
 
 He insists that he could not have filed a petition in error to appeal the adjudication of contempt for three years until his purge was complete. He argues that had he asked the trial court to immediately impose judgment and sentence in 2014, he did not have the means to satisfy the money judgment against him and therefore, he could have been thrown in jail.
 

 ¶ 19 The wife argues that after he was found guilty of contempt, he could have requested the court to enter judgment and sentence in this matter, thereby allowing immediate appeal. Instead, he asked the court to allow him to make payments which the court allowed. She insists he did have the money to pay what he owed her due, in part, to his inheritance from his parents' estate. She also argues that he cannot now complain that he was prejudiced because the court granted his request to make periodic payments to purge the contempt. She points out that in November of 2012, three months prior to the contempt trial, the trial court determined that the bankruptcy court's ruling that the husband still owed the wife could not be relitigated. The husband could have sought an immediate appeal of that decision, at that time, but did not.
 

 ¶ 20 In Oklahoma contempts are not governed by the common law, but by the Oklahoma Constitution and Statutes.
 
 [6]
 
 Contempt has been statutorily classified as either indirect or direct.
 
 [7]
 
 Direct contempt involves conduct in the presence of, or near, the court.
 
 [8]
 
 Indirect contempt includes the wilful
 
 *1042
 
 disobedience of any process or order lawfully issued or made by a court.
 
 [9]
 
 Disobedience of an order to pay alimony in a divorce proceeding constitutes indirect contempt of court.
 
 [10]
 

 ¶ 21 This Court has jurisdiction of an appeal to review a sentence imposed for contempt of court occurring in a civil matter.
 
 [11]
 
 Ordinarily, an order in contempt proceedings is not appealable by right until the judgment and sentence become final.
 
 [12]
 
 In this cause, the appeal was brought after the trial court's judgment and sentence for contempt became final and the appellant completed his purge plan.
 
 [13]
 

 ¶ 22 However, this is not the only way the Court may review contempt proceedings. We may exercise discretion to review certain interlocutory trial court orders when certified by the trial court.
 
 [14]
 
 The order must affect a substantial part of the merits of controversy and be certified by the trial judge that an immediate appeal may materially advance the ultimate termination of the litigation.
 
 [15]
 
 This was the route the husband first took in the prior appeal in case no. 113,068, in which we denied review. Because the Court denied review, the husband argues that having to wait until he paid out his payment plan before getting a final sentence and appealable order, created an unconstitutionally denial of access to Court. He also points out that our requirement that indirect contempt is not appealable until the judgment and sentence become final is not constitutional
 
 *1043
 
 or statutory, but instead based on caselaw.
 

 ¶ 23 The Okla. Const. art. 2, § 6 provides that:
 

 The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.
 

 In
 
 Flandermeyer
 
 v.
 
 Bonner
 
 ,
 
 2006 OK 87
 
 , ¶ 10,
 
 152 P.3d 195
 
 , a case in which the trial court tried a divorce piecemeal over the course of two years, we held that the right to a speedy and certain remedy without delay in a civil proceeding, is one of the rights enjoyed by the citizens of the State.
 
 [16]
 
 While the access to courts issue might be implicated in this cause, access was neither denied, nor delayed under the facts presented.
 

 ¶ 24 When the Court denied review in 113,068, the husband could have sought a stay pending appeal of continued payments, in which case he would not have had to make any payments,
 
 [17]
 
 or he could have posted bond and appealed.
 
 [18]
 
 The husband did not choose either of these options, but instead, made the payments and appealed after the payments were completed.
 
 [19]
 
 Under these facts, the delay was not a violation of the Oklahoma Constitution because it was predicated on how the husband chose to proceed.
 
 [20]
 

 *1044
 

 THE TRIAL COURT DID NOT ERR IN APPLYING RES JUDICATA TO PRIOR BANKRUPTCY COURT PROCEEDINGS.
 

 ¶ 25 The husband argues that the trial court erred by applying res judicata to the bankruptcy court judgment which, in turn, led to an erroneous interpretation of the language in the couple's separation agreement. The wife argues that the trial court correctly applied the doctrine of res judicata.
 

 ¶ 26 Res judicata is a Latin phrase that translates to "a thing adjudicated."
 
 [21]
 
 Res judicata, also known as claim preclusion, prevents the relitigation of previously adjudicated claims, or those claims which could have been raised, but were not, which have been subject to a final judgment on the merits.
 
 [22]
 

 ¶ 27 The bankruptcy proceeding occurred on April 21, 2008, and a transcript of the hearing is included in the record. The bankruptcy court heard evidence regarding the $20,000.00 provision in the separation agreement relating to the personal loan from the wife's aunt and uncle. The evidence concerned why the amount of $20,000.00 was used in the agreement when the actual, original amount of the promissory note was $77,400.00.
 
 [23]
 
 The evidence also revealed that the husband had paid $21,000.00 towards the debt and why he thought he was absolved from paying any more.
 
 [24]
 

 ¶ 28 The June 23, 2008, bankruptcy court judgment provides:
 

 It is ORDERED, ADJUDGED and DECREED that the obligation of the Defendant Warren H. Ellis to hold the Plaintiff Carol A. Lay harmless from liability on the debt that she owes Francis and Carlyn Lay by virtue of a note dated on or about November 5, 1991, is non-dischargeable, the order of discharge in the above-styled chapter 7 bankruptcy case notwithstanding.
 
 [25]
 

 ¶ 29 The bankruptcy court only determined that the debt the husband owed the wife was non-dischargeable. It did not make any findings regarding what amount the husband
 
 *1045
 
 previously or currently owed, what amount he may have already paid, or if by paying $21,000, he had already paid the debt in full. It merely found that the full amount of the debt the husband owed, whatever it was, was not dischargeable in bankruptcy.
 

 ¶ 30 In a handwritten order filed November 28, 2012, the trial court issued a special order which noted that the bankruptcy court had previously determined that the husband was to hold the wife harmless on the full amount remaining due, thus precluding re-litigation of this issue in the contempt proceeding. The trial court also noted that this did not resolve the issue of the wilful failure to pay on the contempt charge, and he set a date for the contempt hearing.
 

 ¶ 31 At the contempt hearing, the wife testified that as a result of the husband's failure to pay her aunt and uncle, she entered into a new promissory note with her aunt and uncle so that she could make the payments on the original note that the husband and wife jointly executed. She made payments under the new note, and kept a log until it was paid off. She paid a total of $38,542.44 in satisfaction of their joint debt. Because the husband had already paid one payment of $500.00 in 2008, a total of $38,042.44 was left that the wife paid on behalf of the joint debt.
 

 ¶ 32 When the husband's attorney sought to introduce evidence from the bankruptcy court proceeding regarding what the wife believed was owed on the note in October of 2000, the trial court excluded it on the basis that evidence was barred by res judicata. The husband made an offer of proof that her answer would have been "$46,000.00." Notwithstanding this exclusion, the husband later testified that he believed that he owed the entire debt. Also notwithstanding the trial court's prior res judicata ruling, a large portion of the hearing concerned how much was really owed to the Lays and had already been paid, and why the husband thought he had already paid the full amount he owed, etc.
 

 ¶ 33 Reviewing the entire transcript, it appears that the trial court: 1) precluded the bankruptcy court's ruling as conclusive in so far as it determined that the husband was responsible for all of the debt to the aunt and uncle (whatever that debt may be); 2) it did not decide what he paid, what was owed, or what the wife actually paid on their behalf to extinguish the debt. Consequently, the husband's argument that the trial court erroneously applied res judicata to the bankruptcy court's ruling is unpersuasive. Res judicata was applicable and the trial court did not err in applying it.
 

 THE TRIAL COURT DID NOT ERR IN ITS INTERPRETATION OF THE SEPARATION AGREEMENT
 

 ¶ 34 The husband argues that the trial court erred in holding him in contempt for not paying the required $38,042.44 (the amount remaining on the note to the Lays that the wife paid on the husband's behalf) when the plain language of the separation agreement only required him to pay approximately $20,000.00. Both parties agree that by the terms of the separation agreement, Virginia law applies. The wife argues that: 1) the separation agreement was negotiated by both parties; 2) the husband knew the amount of the original debt; 3) the husband was responsible for making the payments during the marriage and for several years after separation; 4) the husband received periodic letters from Francis Lay as to the amount due; and 5) when the entire separation agreement is read in whole, the "approximately $20,000.00" figure is obviously unclear.
 

 ¶ 35 The separation agreement requires the husband to assume all of the loan debt and hold the wife harmless for any of it. It also ordered him to pay the wife back $8370.00 she had previously paid towards joint debt. The agreement also acknowledges that the parties had fully disclosed to each other all the obligations or debts which they have incurred on or prior to the agreement. Both parties knew, or should have known, the amount of the original loan, how much they had paid towards it during the marriage, and what was left to pay upon their separation.
 

 ¶ 36 Clearly the use of the term "approximately" when coupled with the fact the number $20,000 was used, when the true amount
 
 *1046
 
 remaining was more than double that (nearly $50,000.00), indicates that the parties either intentionally guessed at the amount owed or inadvertently created an ambiguity, because they both knew or at least should have known it was higher than $20,000. Virginia follows similar rules of construction of contractual language as Oklahoma.
 

 ¶ 37 Under Virginia law, settlement agreements are subject to the same rules of construction as any other contract.
 
 [26]
 
 Matters of contract interpretation are questions of law, and when a contract ambiguity exists, the court may look beyond the four corners of the contract to determine the intent of the parties.
 
 [27]
 
 When all the provisions of the separation agreement are read together, coupled with the both parties' knowledge regarding the amount of debt when the agreement was drafted and how the approximately $20,000.00 number came about, we cannot say that the trial court erred when it sought to determine the actual amount owed on the debt and how much of it the wife had paid on behalf of the husband.
 

 THE TRIAL COURT DID NOT ERR IN FINDING CONTEMPT
 

 ¶ 38 In an indirect contempt case such as this, the contemnor must be proven guilty of acts constituting contempt by clear and convincing evidence.
 
 [28]
 
 Furthermore, when the contemnor admits violation of a court order, the contemnor has the burden of excusing his or her acts.
 
 [29]
 
 The transcript and evidence of the hearing on contempt illustrates that the husband could have but did not make payments pursuant to the separation agreement and prior court orders. His excuse regarding the Lays' loan, that he thought he only owed $20,000.00 justified his refusal to pay his obligations is clearly controverted by the evidence in both the bankruptcy proceeding as well as the hearing on contempt. The only other explanation offered by the husband was a lack of funds which was also clearly controverted by the evidence. Trial court did not err in recognizing the husband's wilful conduct and thus holding the husband in contempt. Nevertheless, pursuant to the husband's purge plan, the debt has now been purged.
 

 CONCLUSION
 

 ¶ 39 The husband was not denied access to the court's in his appeal of the contempt finding because he had avenues of review which he did not pursue. Nor did the trial court err in its interpretation of the separation agreement or in applying res judicata to a previous court ruling involving the same parties on the same issues. The evidence clearly and convincingly showed that the husband was in contempt and that the trial court did not err in making such a finding. Consequently, we affirm the trial court.
 

 APPEAL PREVIOUSLY RETAINED; TRIAL COURT AFFIRMED.
 

 GURICH, V.C.J., KAUGER, WINCHESTER, EDMONDSON, COLBERT, REIF, WYRICK, DARBY, JJ., concur.
 

 COMBS, C.J., concurs in part, dissents in part.
 

 [1]
 

 12 O.S. 2011
 
 App. 1, Oklahoma Supreme Court Rules, Rule 1.50 provides:
 

 Any interlocutory order not appealable by right under the statutes, which order affects a substantial part of the merits of the controversy, may be brought for review to this Court in compliance with the rules in this Part when the trial judge or the judge's successor has certified that an immediate appeal from that order may materially advance the ultimate termination of the litigation. In the exercise of its statutory discretion this Court may refuse to review a certified interlocutory order. 12 O.S. § 952, Subdiv. (b)(3).
 

 No certified interlocutory order shall be considered if taken from an order overruling a motion for summary judgment. See Rule 1.40 for the application of other rules to review of a certified interlocutory order.
 

 12 O.S. 2011
 
 Ch. 15 § 952(b)(3) provides:
 

 (b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:
 

 ... 3. Any other order, which affects a substantial part of the merits of the controversy when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; provided, however, that the Supreme Court, in its discretion, may refuse to hear the appeal. If the Supreme Court assumes jurisdiction of the appeal, it shall indicate in its order whether the action in the trial court shall be stayed or shall continue.
 

 The failure of a party to appeal from an order that is appealable under either subdivision 2 or 3 of subsection (b) of this section shall not preclude him from asserting error in the order after the judgment or final order is rendered.
 

 [2]
 

 12 O.S. 2011
 
 App. 1, Oklahoma Supreme Court Rules, Rule 1.51 provides:
 

 (a) Commencement. Time for the commencement of a proceeding to review a certified interlocutory order shall begin to run from the date of the filing of the certification order wherein the trial court certifies in writing that an immediate review may materially advance the ultimate termination of the litigation. A proceeding to review a certified interlocutory order shall be commenced by filing a petition for certiorari within 30 days of the date the certification is filed in the trial court. This time limit cannot be extended either by the trial court or by this Court. A petition for certiorari to review a certified interlocutory order will be deemed filed when mailed in compliance with Rule 1.4. See Rule 1.4(e).
 

 (b) Motion for New Trial. The filing of a motion for new trial, reconsideration, re-examination, rehearing, or to vacate the interlocutory order shall not operate to extend the time to appeal from such order.
 

 (c) Petition, Entry of Appearance, and Costs. A proceeding for review of a certified interlocutory order shall be regarded as commenced when the petition is filed and costs are deposited as set out in Rule 1.23. The petitioner and respondent shall file entries of appearance in conformity with Rules 1.23 and 1.25.
 

 [3]
 

 The Court has held that when issues which speak to the merits of the action are raised for the first time in the briefs, but not at the trial court or petition in error, consideration of those issues on appeal is inappropriate.
 
 Nu-Pro
 
 ,
 
 Inc
 
 ., v.
 
 G.L
 
 .
 
 Bartlett&Company
 
 ,
 
 Inc
 
 ,
 
 1977 OK 225
 
 , ¶ 7,
 
 575 P.2d 618
 
 . However, under our current Rule 1.26 (b), Oklahoma Supreme Court Rules,
 
 12 O.S. 2011
 
 Ch. 15, App. 1, the petition in error is deemed amended to include errors set forth in the brief-in-chief. Title
 
 12 O.S. 2011
 
 Ch. 15, App., 1, Rule 1.26(b) provides:
 

 (b) Amendment Upon Filing of Brief-in-chief.
 

 The petition in error will be deemed amended to include errors set forth in the propositions in the brief-in-chief, provided that in no event may the appeal be broader in scope than allowed by Rule 1.26(a). Jackson v. Oklahoma Memorial Hospital,
 
 1995 OK 112
 
 ¶ 5,
 
 909 P.2d 765
 
 , 768. Error may not be raised for the first time in any reply brief.
 

 [4]
 

 Art. 2 Okla. Const. § 6 provides:
 

 The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation, and right and justice shall be administered without sale, denial, delay or prejudice.
 

 [5]
 

 Art. 2 Okla. Const. § 6, see note 4, supra.
 

 [6]
 

 Sommer
 
 v.
 
 Sommer
 
 ,
 
 1997 OK 123
 
 , ¶ 9,
 
 947 P.2d 512
 
 ;
 
 Watson
 
 v.
 
 State
 
 ex rel.
 
 Michael
 
 ,
 
 1989 OK 116
 
 ,
 
 777 P.2d 945
 
 . In
 
 Sommer
 
 v.
 
 Sommer
 
 ,
 
 supra,
 
 we said, in footnote 2, that:
 

 A court also possesses inherent power to punish for contempt.
 
 Harber
 
 v.
 
 Shaffer
 
 ,
 
 1988 OK 45
 
 ,
 
 755 P.2d 640
 
 , 641. However a court's inherent power to define and punish contempts does not supersede or override any conflicting provision of the Oklahoma Constitution. See
 
 Seay
 
 v.
 
 Howell
 
 ,
 
 311 P.2d 207
 
 , 208 (Okla. 1957) where this Court explained that under our form and theory of government all governmental power is inherent in the people, the people possess the power to deprive the courts of their inherent powers to define contempts, and that power to define contempts has been specifically delegated by the people to the Legislature in accordance with Article 2 § 25 of the Oklahoma Constitution.
 

 [7]
 

 Sommer
 
 v.
 
 Sommer
 
 , see note 6, supra;
 
 Woodworth
 
 v.
 
 Woodworth
 
 ,
 
 1935 OK 585
 
 , ¶ 0,
 
 173 Okla. 554
 
 ,
 
 48 P.2d 1052
 
 .
 
 21 O.S. 2011
 
 § 565 provides:
 

 Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence, and of the unlawful and willful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance, so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. Indirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of a court.
 

 [8]
 

 21 O.S. 2011
 
 § 565 ;
 
 Sommer
 
 v.
 
 Sommer
 
 , see note 6, supra;
 
 ExPartePlaistridge
 
 ,
 
 1918 OK 352
 
 ,
 
 173 P. 646
 
 , ¶ 4.
 

 [9]
 

 21 O.S. 2011
 
 § 565 ;
 
 Sommer
 
 v.
 
 Sommer
 
 , see note 6, supra;
 
 ExPartePlaistridge
 
 , see note 8, supra.
 

 [10]
 

 Sommer
 
 v.
 
 Sommer
 
 , see note 6, supra;
 
 ExParteBighorse
 
 ,
 
 1936 OK 686
 
 , ¶ 0,
 
 62 P.2d 487
 
 ;
 
 Wells
 
 v.
 
 Wells
 
 ,
 
 1915 OK 211
 
 , ¶ 0, 148,
 
 46 Okla. 88
 
 ,
 
 148 P. 723
 
 .
 

 [11]
 

 Okla. Sup. Ct. R. 1.21 (e)(1) provides:
 

 (e) Contempt Appeals and Juvenile Delinquency Appeals.
 

 (1) An appeal or habeas corpus proceeding to review a sentence imposed for contempt of court occurring in a civil action or proceeding shall be brought in the Supreme Court; an appeal or habeas corpus proceeding to review a sentence imposed for contempt of court occurring in a criminal prosecution or a grand jury proceeding shall be brought in the Court of Criminal Appeals. If a contempt appeal or habeas corpus proceeding is not brought in the appellate court designated as proper by this rule, the case will be transferred to the proper court either on motion or sua sponte. Art. VII, 4, Okla.Const. A contempt appeal shall be considered timely brought for review, on transfer to either appellate court, if it was commenced in the Supreme Court within the time limit and in the manner prescribed by these Rules or in the Court of Criminal appeals within one hundred and twenty (120) days from the time judgment and sentence was imposed and in the manner prescribed by the rules of that court.
 

 Sommer
 
 v.
 
 Sommer
 
 , see note 6 at ¶ 5;
 
 Fulreader
 
 v.
 
 State
 
 ,
 
 1965 OK 187
 
 , ¶ 3,
 
 408 P.2d 775
 
 [The law is well settled by prior decisions of this Court that proceedings for direct contempt are neither civil nor criminal in character but are sui generis and this Court has jurisdiction to review an order adjudiging one in contempt and imposing punishment therefor.].
 

 [12]
 

 Sommer
 
 v.
 
 Sommer
 
 , see note 6, supra;
 
 FirstNat
 
 .
 
 BankandTrustCo
 
 .
 
 ofAda
 
 v.
 
 Arles
 
 ,
 
 1991 OK 78
 
 , ¶ 5,
 
 816 P.2d 537
 
 ; See also,
 
 Hampton
 
 v.
 
 Hampton
 
 ,
 
 1980 OK 46
 
 , ¶ 1,
 
 609 P.2d 772
 
 .
 

 [13]
 

 A contempt proceeding to satisfy an award of support alimony is constitutionally permissible [under Okla. Const. Art. 2 § 13 Imprisonment for Debt] even though the payments have been reduced to judgment.
 
 Sommer
 
 v.
 
 Sommer
 
 , see note 6, supra.
 

 [14]
 

 Sommer
 
 v.
 
 Sommer
 
 , see note 6, supra;
 

 [15]
 

 12 O.S. 2011
 
 § 952(b)(3) provides:
 

 (b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:
 

 ... 3. Any other order, which affects a substantial part of the merits of the controversy when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; provided, however, that the Supreme Court, in its discretion, may refuse to hear the appeal. If the Supreme Court assumes jurisdiction of the appeal, it shall indicate in its order whether the action in the trial court shall be stayed or shall continue.
 

 The failure of a party to appeal from an order that is appealable under either subdivision 2 or 3 of subsection (b) of this section shall not preclude him from asserting error in the order after the judgment or final order is rendered.
 

 Sommer
 
 v.
 
 Sommer
 
 , see note 6, supra. The term "merits" includes the real or substantial grounds of an action or defense, and excludes matters of practice, procedure, and evidence.
 
 Pierson
 
 v.
 
 Canupp
 
 ,
 
 1988 OK 47
 
 ,
 
 754 P.2d 548
 
 , 552 n.8 ;
 
 Ellison
 
 v.
 
 Ellison
 
 ,
 
 1996 OK 64
 
 , ¶ 5,
 
 919 P.2d 1
 
 .
 

 [16]
 

 See also,
 
 State
 

 ex rel
 
 .
 
 OklahomaBarAssociation
 
 v.
 
 Mothershed
 
 ,
 
 2011 OK 84
 
 , ¶ 64,
 
 264 P.3d 1197
 
 ;
 
 State
 

 ex rel
 
 .
 
 OklahomaBarAssociation
 
 v.
 
 Maddox
 
 ,
 
 2006 OK 95
 
 , ¶ 16,
 
 152 P.3d 204
 
 ;
 
 State
 

 ex rel
 
 .
 
 BarAssociation
 
 v.
 
 Lowe
 
 ,
 
 1982 OK 20
 
 , ¶ 7,
 
 640 P.2d 1361
 
 ;
 
 CivilServiceCommissionofCityofTulsa
 
 v.
 
 Gresham
 
 ,
 
 1982 OK 125
 
 , ¶ 40,
 
 653 P.2d 920
 
 .
 

 [17]
 

 Title
 
 22 O.S. 2011
 
 § 1076 provides:
 

 The court shall at the time of entering judgment and sentence notify the defendant of his right to appeal. An appeal from a judgment of conviction stays the execution of the judgment in all cases where sentence of death is imposed, but does not stay the execution of the judgment in any other case unless the trial or appellate court shall so order.
 

 [18]
 

 Title
 
 22 O.S. 2011
 
 § 1078 provides:
 

 When bail is allowed, the court shall fix the amount of the appeal bond and the time in which the bond shall be given in order to stay the execution of the judgment pending the filing of the appeal in the appellate court, and until such bond is made shall hold the defendant in custody. If the bond be given in the time fixed by the court, the execution of the judgment shall be stayed during the time fixed by law for the filing of the appeal in the appellate court. If the appeal is filed within the time provided by law, then the bond shall stay the execution of the sentence during the pendency of the appeal, subject to the power of the court to require a new or additional bond when the same is by the court deemed necessary. If the bond is not given within the time fixed, or if given and the appeal not be filed in the appellate court within the time provided by law, the judgment of the court shall immediately be carried into execution
 

 See,
 
 Gilchrist
 
 v.
 
 Lowry
 
 ,
 
 1945 OK 118
 
 , ¶ 3,
 
 195 Okla. 537
 
 ,
 
 159 P.2d 261
 
 [Defendant cited for indirect contempt for delinquent child support posted bond to commence proceeding in the Supreme Court.];
 
 State
 

 ex rel
 
 .
 
 Young
 
 v.
 
 Woodson
 
 ,
 
 1974 OK 54
 
 , ¶ 2,
 
 522 P.2d 1035
 
 [Wherein an attorney found in contempt of Court posed bond to appeal the finding of contempt.];
 
 D.M
 
 . v.
 
 State
 
 ,
 
 1996 OK CR 53
 
 , ¶ 7,
 
 927 P.2d 50
 
 [Appellant held in direct contempt posted appeal bond and appealed sentencing.];
 
 Zeigler
 
 v.
 
 State
 
 ,
 
 1991 OK CR 25
 
 , ¶ 5,
 
 806 P.2d 1131
 
 [Appellant held in contempt of court allowed to post appeal bond, which was later modified/reduced.];
 
 League
 
 v.
 
 League
 
 ,
 
 1983 OK CIV APP 23
 
 , ¶ 5,
 

 735 P.2d 583
 

 [Trial court set appeal bond of $15,000.00 for father found guilty of indirect contempt which the Supreme Court reduced to $2000.00].
 

 [19]
 

 In
 
 FirstNat
 
 .
 
 BankandTrustCo
 
 .
 
 ofAda
 
 v.
 
 Arles
 
 ,
 
 1991 OK 78
 
 , ¶ 4,
 
 816 P.2d 537
 
 , a case involving contempt, the Court said:
 

 Before addressing the substance of this case, we first must inquire into our own jurisdiction to resolve the matter. Although the order complained of found that Arles was guilty of contempt, sentence was deferred for six months. A court minute in the record indicates that the parties were concerned about the appealability of such an order. The trial court offered to accelerate the deferred sentence to assure its finality. However, the record does not show such was done.
 

 The Court ended up recasting the appeal as an original proceeding asking for a writ of prohibition, something we could have done in 113,068, but did not.
 

 [20]
 

 In
 
 State
 

 ex rel
 
 .
 
 OklahomaBarAssociation
 
 v.
 
 Mothershed
 
 , see note 16, supra, the Court looked at four factors to consider whether excessive delay has violated a litigant's rights. The factors include whether: 1) the length of the delay; 2) the reason for the delay; 3) the party's assertion of the right; and 4) the prejudice to the party occasioned by the delay.
 
 Flandermeyer
 
 v.
 
 Bonner
 
 ,
 
 2006 OK 87
 
 , ¶ 11,
 
 152 P.3d 195
 
 ;
 
 State
 

 ex rel
 
 .
 
 OklahomaBarAssociation
 
 v.
 
 Maddox
 
 , see note 16, supra;
 
 CivilServiceCommissionofCityofTulsa
 
 v.
 
 Gresham
 
 , see note 16, supra.
 

 [21]
 

 Bierman
 
 v.
 
 AramarkRefreshmentServices
 
 ,
 
 Inc
 
 ,
 

 2008 OK 29
 

 , ¶ 11, fn. 9,
 
 198 P.3d 877
 
 .
 

 [22]
 

 Bierman
 
 v.
 
 AramarkRefreshmentServices
 
 ,
 
 Inc
 
 , see note 21,
 
 supra;
 

 MillerDollarhide
 
 ,
 
 P
 
 .
 
 C
 
 . v.
 
 Tal
 
 .,
 
 2006 OK 27
 
 , ¶ 8, fn 11,
 
 174 P.3d 559
 
 .
 

 [23]
 

 In the bankruptcy proceeding, the wife explained why the number 20,000 was used. Bankruptcy Proceeding Transcript of April 21, 2008, pg 15, ln. 19 provides:
 

 Well, when we were talking with my attorney when I was preparing the separation, with the knowledge of Mr. Ellis, with my attorney in Charlottesville, she indicated to me she felt that there should be a dollar amount involved. And that could I go ahead and furnish her with a dollar amount to incorporate into the separation agreement. I came home and asked Mr. Ellis what the amount of the debt he felt was, and he said approximately 20,000. I said would that be 20,000 exactly or 20,000 or above. He said oh, somewhere in the neighborhood of $20,000. Then I went back to my attorney, gave her that. And I need it to be very clear because I'n not exactly sure of the amount. He states approximately $20,000. That's the language that was incorporated into the separation agreement.
 

 And at pg. 20, ln. 19:
 

 Q Was there ever, in describing this note as having been approximately of $20,000, was there any source of the description between you and Mr. Ellis about how any portion of this debt would be settled?
 

 A No. The note was to be totally assumed by Mr. Ellis.
 

 [24]
 

 Bankruptcy Proceeding Transcript of April 21, 2008, pg 31, ln 5:
 

 A. That was the amount that we believed that we owed them.
 

 Q Okay. And when you saw that amount what was your impression?
 

 A That it was a manageable amount.
 

 Q And where did that amount come from?
 

 A I can't really answer that. I mean I do know that we discussed it, I don't know if there was any conversations with the Lays or we looked at cancelled checks. But it was a figure that was discussed with Mr. Lay.
 

 And pg 37, ln 13:
 

 A Yeah. I've got the payment schedule. It's in some of papers being passed around here. I paid down the principal approximately $21,000.00.
 

 Q And is there some particular reason that you paid more than $21,000 if you thought the debt was only $20,000?
 

 A I didn't keep good accounting on it.
 

 [25]
 

 The order also states "for the reasons states in the accompanying memorandum," but the accompanying memorandum does not appear in the record.
 

 [26]
 

 Southerland
 
 v.
 
 EstateofSoutherland
 
 ,
 
 III
 
 ,
 
 249 Va. 584
 
 ,
 
 457 S.E.2d 375
 
 , 378 (Va. 1995) ;
 
 Bailey
 
 v.
 
 Bailey
 
 ,
 
 54 Va. App. 209
 
 ,
 
 677 S.E.2d 56
 
 , 59 (Va. App. 2009).
 

 [27]
 

 Eure
 
 v.
 
 NorfolkShipbuilding&DrydockCorp
 
 .,
 
 Inc
 
 .,
 
 263 Va. 624
 
 ,
 
 561 S.E.2d 663
 
 , 667 (Va. 2002.) ;
 
 Tuomala
 
 v.
 
 RegentUniversity
 
 ,
 
 252 Va. 368
 
 ,
 
 477 S.E.2d 501
 
 (Va. 1996).
 

 [28]
 

 Whillock
 
 v.
 
 Whillock
 
 ,
 
 1976 OK 51
 
 , ¶ 24,
 
 550 P.2d 558
 
 ; See also,
 
 Wells
 
 v.
 
 Wells
 
 ,
 
 1915 OK 211
 
 , ¶ 10-11, 148,
 
 46 Okla. 88
 
 ,
 
 148 P. 723
 
 .
 

 [29]
 

 Whillock
 
 v.
 
 Whillock
 
 , see note 28, supra;
 
 Morgan
 
 v.
 
 NationalBankofCommerce
 
 ,
 
 Wells
 
 v.
 
 Wells
 
 , see note 28, supra.